# Norris's Appeal.

| 64 | 275 |
|----|-----|
| 170 | 443 |

1. A court of equity has no jurisdiction to fix boundaries of legal estates, unless some equity is superinduced by the act of the parties.

2. The Acts of April 15th 1858 and April 5th 1859 (Boundaries), are confined to cases which are properly the subject of equitable jurisdiction.

3. Where there are grounds for equitable interposition, the legislature may enlarge or diminish the powers of the court.

4. Constructive possession, where there is no actual possession, is in him who has the legal and rightful title.

| 64 | 275 |
|----|-----|
| 204 | 366 |
| 64 | 275 |
| 206 | *151 |

February 21st 1870.   Before READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.   THOMPSON, C. J., at Nisi Prius.

Appeal from the decree of the Court of Common Pleas of *Philadelphia :* No. 141½, to January Term 1870.

On the 14th of May 1859, George W. Norris and Mary P. his wife (late Fisher), in her right and others, filed a bill against the City of Philadelphia, Samuel Morris and others.

The bill set out these facts: The plaintiffs were and for some time had been seised of a tract of land in Philadelphia,—which the bill described,—bounded on the east by the river Delaware,

and partly by land of the defendants.    The defendants' title was
under the will of Samuel B. Morris, who directed improvements
to his real estate should be made by his executors, including the
construction of a bank on the river front.    The plaintiffs then
averred, " that the boundaries between their tract and the tracts
owned by the city of Philadelphia, and by the other defendants
respectively, have become confused and rendered uncertain by
reason of lapse of time, which has occasioned the obliteration,
destruction or loss of the marks on the ground of the natural or
artificial monuments, and of the other evidence of the true course
and position of the said boundaries, and also by reason of natural
or physical causes, that is to say, the gradual but extensive alter-
ations of and addition to the shore or bank of the said river from
large alluvial accretions and deposits, and the growth or increase
of flats and marshes in that neighborhood, from which causes or
some of them, amongst other things, the line as well of high as
of low water in the said river has become in the course of time
and since the said boundaries were established, greatly changed
both in position and direction :" and " that the defendants, by
reason of the said confusion and uncertainty of the boundaries,
wrongfully claim title respectively to portions of your orators'
said tract or piece of land; and in particular pretend that each
of their several tracts or pieces of land extends in the original
direction or course of its bounding lines to the present low-water
mark of the said river so as to exclude your orators' said tract
or piece of land from any front upon the said river; and conse-
quently to preclude your orators from the right and privilege of
extending wharves, piers and other erections into the said river
from their tract, and that such claim or pretence being publicly
and often made has created and does create a cloud upon your
orators' title, so that they are unable to deal with and dispose of
their said tract or piece of land as they otherwise might," &c.

" That certain portions of their said tract are covered by water
at high tide to such a degree that at present and for some years
past no actual possession thereof, by enclosure or other visible
or notorious acts of occupation, has or can be taken or maintained
for any length of time, either by the plaintiffs or by the defend-
ants or either of them, and that by reason thereof it is impossible
to ascertain the boundaries at law so as to establish them in a per-
manent manner, at least without a multiplicity of actions."

They charge " that it is impossible to establish the said bound-
aries at law in another respect, that is to say, so far as the same apply
to and extend over the additions and accretions to the shore or bank
of the said river before mentioned, inasmuch as the relative posi-
tion of the said three tracts or pieces of land respectively towards
each other and towards the river front is such that the just share
and proportion of each in the said additions or accretions must

depend on and be measured by the shares or proportions of both the others, and can only be ascertained and adjusted at the same time and in the same proceeding, upon principles of equity and justice which could not be practically enforced in an action at law."

The prayer was: that the boundaries between the plaintiffs' tract and the several tracts of land belonging to the defendants, may be ascertained, distinguished and adjusted; and that a commission may issue for the purpose of distinguishing, ascertaining and adjusting the said boundaries; and that all proper directions may be given in respect to the same; and for further relief.

The city did not appear.

The other defendants pleaded: "That the matter in dispute is solely the ownership of certain marsh lands or flats, which are an alluvion or accretion to the fast land formed by deposit by the river Delaware, between the ancient front or line of the fast land of the defendants and their present line of low-water mark in the said river, which marsh or flat has been claimed by these defendants, and those under whom they claim, from time immemorial, and at all times since the same began to be formed by the river, and that more than twenty-one years before the complainants' bill was filed, actual possession was taken thereof, and a fence put up by the defendants' testator, along the northern boundary line of said marsh, being the northern boundary line of these defendants' property, on the fast land protracted to the low-water mark of the river; and these defendants claim title to so much of the said marsh lands or flats as lies between the north and south boundary lines of this property, on the fast land protracted to the low-water mark and to no more; which said boundary lines are very nearly parallel to each other, and at right angles, as near as may be, to the line of low-water mark on the river Delaware; and they claim title thereto solely and entirely as an accretion to the fast land they own and are in undisputed possession of under title-deeds vesting the same in them and those under whom they claim, and not in the complainants or any one they claim under; and they insist that this court under the circumstances of this case has no jurisdiction, sitting as a court of equity, to determine the ownership of the premises or the proper location of the boundaries, if the fence erected by the devisor of these defendants was erroneously placed on the ground, but that the same can only be determined in a court of common law," &c.

The defendants filed an answer, in support of the plea, alleging facts in reference to their title, &c. Formerly all the tracts owned by the respective parties had river fronts, and the tracts did not then adjoin; but accretions have been made to the shore, so that inasmuch as the lines of the respective tracts are

not parallel, they would if protracted, converge and consequently conflict.

The proceeding was under the Act of April 15th 1858, § 1, Pamph. L. 267, Purd. 402, pl. 12, viz. : "The Supreme Court in and for the Eastern District of Pennsylvania, and the Court of Common Pleas of Philadelphia, respectively, shall have all and singular the jurisdiction and powers of a court of chancery, in all cases of disputed boundaries between adjoining and neighboring lands within the said county, whether the parties owning the same, hold or claim to hold under the same, or by different titles." And the Act of April 5th 1859, Pamph. L. 359, Purd. 402, pl. 13, 14, viz. :—

Sect. 1. "The jurisdiction and powers given by the act to which this act is a supplement, shall extend to and embrace the ascertainment and adjustment of disputed boundaries between adjoining and neighboring lands in the county of Philadelphia, where such boundaries are or shall have become confused or rendered uncertain, either by lapse of time, by natural causes, or by the act, neglect or default of any present or former owner or occupant thereof."

Sect. 2. "If upon bill filed in any such case it shall appear that the whole or any part of the lands mentioned in such bill have or has never been actually parted or divided, the court shall, without dismissing the bill, proceed thereupon to decree partition of such undivided lands between the parties to the suit according to their just rights and practice of courts of equity in this Commonwealth."

The case was heard December 20th 1869, in the court below on bill and plea. The bill was dismissed *pro forma*.

On appeal to the Supreme Court, the plaintiffs assigned for error the decree dismissing their bill.

*H. Wharton* and *W. H. Rawle*, for appellants.—The accretions accruing to both complainants and defendants from the same natural source, by the same process and during the same simultaneous though gradual process of time, must in every just sense be deemed a common title, and this equitable proceeding may be maintained : Perry *v.* Pratt, 31 Conn. 433 ; Agar *v.* Fairfax, 2 Lead. Cas. in Eq. 374; Adams's Eq. 230. A mere circumstantial denial of the facts alleged in a bill cannot be made matter of a plea, nor is duplicity allowable : Mitford Eq. Plead. 209, 295 ; Beames on Pleas, by Halstead 9, 21 ; Milligan *v.* Milledge, 3 Cranch 220; Whitbread *v.* Brockhurst, 1 Brown Ch. C. 404. The plea does not allege facts showing an open, notorious, adverse and exclusive possession for twenty-one years : De Haven *v.* Landell, 7 Casey 126.

[Norris's Appeal.]

*R. C. McMurtrie*, for appellees.—The jurisdiction of chancery does not extend to legal titles: Waring *v.* Hotham, 1 Brown's Ch. R. 40. There must be some equity superinduced by the acts of the party, or circumstances of fraud or confusion: Wake *v.* Conyers, Eden 335; Attorney-General *v.* Fullerton, 2 Ves. & B. 263; Leeds *v.* Strafford, 4 Ves. 185; O'Hara *v.* Strange, 11 Irish Eq. 262; Stuart *v.* Coalter, 4 Randolph 74; Miller *v.* Warrington, 1 Jac. & Walk. 471; Speer *v.* Crawlter, 2 Merivale 410.

The opinion of the court was delivered, July 7th 1870, by

SHARSWOOD, J.—The Act of Assembly of April 15th 1858, Pamph. L. 267, and the supplement thereto of April 5th 1859, Pamph. L. 359, upon which the bill filed in the court below is professedly based, are confined in their operation to the county of Philadelphia. It is a sample of the local legislation, unhappily, it seems, becoming popular—at least very much on the increase of late years, and which threatens to destroy by degrees all uniformity in our laws; so that a different system of rights and remedies will take root and grow up in each separate county or section. It is much to be deprecated. Such laws are certainly not entitled to be regarded with any unusual favor by the courts, and are not to be extended by construction beyond what their language plainly imports. The legislature probably could not have been induced to adopt such provisions as these acts contain, at least in the sense which is claimed for them, for all parts of the Commonwealth; for if the construction contended for be sound, they would draw within the maw of a court of equity all questions of disputed boundaries, including interfering surveys and settlements, which have been heretofore cheaply and satisfactorily committed to the determination of courts of common law, with the necessarily accompanying right of trial by jury. Even in England the very limited jurisdiction exercised by the Court of Chancery upon the subject of boundaries has been justly regarded with great disfavor and jealousy. In a leading case, Lord Keeper Henley, afterwards Lord Chancellor and Earl of Northington, used this very emphatic language: "There have, since I sat here, been several (bills) to fix boundaries, when a right to the freehold of the soil has been incidental. But I have seen such frightful consequences arising from them, that I think these suits are very far from deserving encouragement. They originally came into this court under the equity of preventing multiplicity of suits; yet in those cases I have observed that they have been sometimes attended with more expense than if all the suits which they had apprehended, and which they were brought to prevent, had actually been tried at law:" Wake *v.* Conyers, 1 Eden 331; 2 Cox 360. It was established as a principle in that case, which has been maintained and followed ever since, that the court has no jurisdiction

to fix the boundaries of legal estates, unless some equity is super-induced by the act of the parties: 2 Leading Cases in Equity 318. It is maintained, however, by the learned counsel for the appellants, that the Acts of 1858 and 1859 carry the jurisdiction of a court of equity in Philadelphia county beyond that usually exercised by the Court of Chancery in England on the subject of disputed boundaries, and it is frankly conceded that there a mere dispute as to the dividing line of two adjoining estates, not held under the same title, where there is no especial equity affecting the defendant, would not give jurisdiction. Unless these acts are to have this construction, the appellants have no ground to stand upon. No special equity to affect the defendants is alleged or pretended. It was a very grave constitutional question, though it must now be regarded as solemnly settled by this court, whether the legislature can constitutionally transfer any part of the common-law jurisdiction heretofore enjoyed and exercised by courts and juries to a court of chancery. By Art. V., sect. 6, of the Constitution, it is indeed provided, that "the legislature shall vest in the Supreme Court and the several Courts of Common Pleas, such powers to grant relief in equity as shall be found necessary, and may from time to time enlarge or diminish their powers, or vest them in such other courts as they shall judge proper for the due administration of justice;" but this section must be read along with Art. IX., sect. 6, in which it is also declared, "that trial by jury shall be as heretofore, and the right thereof remain inviolate;" an article which has a very special declaration of sanctity annexed to it by the people. If the legislature can transfer a part, they can the whole of the jurisdiction in civil cases to courts of equity, and thus practically abolish trial by jury entirely in these cases. This court has accordingly held that the Act of April 22d 1856, Pamph. L. 502, giving a tenant in common in coal or iron mines, whose right is denied or resisted, the power to apply by petition in equity to the Court of Common Pleas of the county where the lands lie, and investing such court with the jurisdiction to adjudicate and determine the rights of the several parties according to the course of a court of chancery, conflicts with the constitutional right of the citizen to have controverted questions of fact in common-law causes decided by a jury, and that it is applicable only to cases in which the rights of the complainants are equitable: North Pennsylvania Coal Co. *v.* Snowden, 6 Wright 488. "It is true," said Mr. Justice Strong, "that the legislature are authorized to vest in the courts such powers (beyond those enumerated) to grant relief in equity as shall be found necessary, but this must be understood as referring to powers in equity cases, in that class of cases of which chancery had jurisdiction. Such an understanding is necessary to make the different parts of the constitution consistent with each other, and to give effect to all.

[Norris's Appeal.]

It cannot mean that the legislature may confer upon the Supreme Court and the Courts of Common Pleas the power of trying according to the course of chancery, any question which has always been triable according to the course of law by a jury. If it can, then an ejectment founded solely on legal title, an action of debt on a bond, or a replevin, or an action of trespass may be sent into chancery, all contested facts in it to be decided by the judge, and the intervention of a jury be unknown. Then what has become of the constitutional right of the citizen? Such a doctrine would startle the people of this Commonwealth, and justly, for it would deprive them of one of their most valuable privileges. No power in our government can take from the litigant the right to have his case tried by a jury, substantially in the mode and with the same effect as that which belonged to jury trials in similar cases, when the Constitution of 1776 was adopted. What is law and what is equity, is a judicial question. It belongs, therefore, exclusively to the judiciary. But were it admitted that the legislature could authoritatively convert a legal right into an equitable one, a court of equity could not, as such, enforce it. The judiciary, no more than the legislature, can deny to any litigant the right of trial by jury, in a case appropriate to such a mode of trial. The Act of 1856, then, is applicable only to cases in which the rights of the complainants are equitable. It would conflict with the Constitution, if it had a more extended application."

I have made so full an extract from this opinion, because, though spoken of the Act of 1856, every word of it applies to the Act of 1858 and 1859, now in question. We do not hold these acts to be unconstitutional. It is not necessary to do so. We are bound to give them such a construction as will not conflict with the constitution; and that must necessarily be that they are confined in their true intendment to cases which are properly the subject of equitable jurisdiction. That jurisdiction must first be shown to exist, before the remedial provisions of the act can apply. The Act of 1858, in so many words, confers upon the Supreme Court and the Court of Common Pleas of Philadelphia county respectively, "all and singular the jurisdictions and powers of a court of chancery in all cases of disputed boundaries between adjoining and neighboring lands within the said county, whether the parties owning the same, hold or claim to hold under the same or different titles." The supplement of 1859 declares, "that the jurisdiction and powers given, by the act to which this act is a supplement, to the courts therein named, shall extend to and embrace the ascertainment and adjustment of disputed boundaries between adjoining and neighboring lands in the county of Philadelphia, when such boundaries are or shall have become confused or rendered uncertain, either by lapse of time, by natural causes, or by the act, neglect or default of any present or former owner

[Norris's Appeal.]

or occupant thereof." Under both acts, as will be seen, it is only the jurisdiction of a court of chancery which is conferred. We must first determine whether that jurisdiction exists—rather, perhaps, what it is in regard to the subject-matter. No doubt, where there are grounds of equitable interposition, the legislature may, in the words of the constitution, "enlarge or diminish" the powers of the court; and this they have done in these acts. But the fundamental principle, which requires that there should be an equity in its technical sense in order to confer the jurisdiction, they have not attempted to disturb by anything therein expressed. Upon the bill and plea, upon which this cause was heard and decided in the court below, there was no ground of equitable interposition alleged or pretended. None such has been advanced in this court. The plea, which must be accepted as true, objects to the jurisdiction, because the matter or thing in dispute is the title to certain marsh lands or flats, which are an alluvion or accretion to the fast lands formed by deposit in the river Delaware; and the bill and draft annexed exhibit the same fact. Indeed, the lands of the plaintiffs and defendants—all riparian proprietors on the river—are not even "adjoining and neighboring" lands, within the words of the acts; and it is only by the protraction of the lines of their respective tracts, according to a principle claimed by the plaintiffs, through the marsh or flats to low-water mark that they infringe on each other, and thus come in conflict. How their lines are to be protracted and run, depends upon a pure question of law; it has not a spark of equity in it. It can and must be determined by a court and jury, in an action of trespass or ejectment, like any other question of legal title. Nor does there exist any insuperable difficulty in the way of such remedies at common law, so as to render them inadequate and justify an appeal to the jurisdiction of a court of equity. It is alleged in the bill, although denied in the plea and answer, that there never has been, and in the nature of the subject could not be, exclusive and adverse enclosure and possession of land under the periodical dominion of the tide. Be it so. Constructive possession, where there is no actual possession, is adjudged to be in him in whom is the legal and rightful title. Either party, by the simple expedient of a fence or a wall in assertion of his right, may put his adversary to the necessity of either acquiescing in or controverting it. It is surely no answer to say, in order to give a court of equity jurisdiction, that this would be difficult and expensive to keep up. We must leave these parties, therefore, to their legal remedies, for they have none but legal rights, however convenient the appellants may think it to have a commission out of chancery, at joint expense, to decide the question in dispute as to the course of the lines, to run them by actual survey, and to make partition

[Norris's Appeal.]

of the undivided lands between the parties. A court of equity, as has been said, may do great things, but not all things.

> Decree affirmed and appeal dismissed at the costs of the appellants.

THOMPSON, C. J.—I was not present at the argument, but fully agree to the principle decided in the above case.