8 U.S. 443
 4 Cranch 443
 2 L.Ed. 673
 THE UNITED STATES
v.
THE SCHOONER BETSEY AND CHARLOTTE, AND HER CARGO.
 February Term, 1808
 
 1
 THIS was an appeal from the sentence of the circuit court of the district of Columbia, reversing that of the district court, which condemned the schooner Betsey and Charlotte, and her cargo, as forfeited, for a violation of the act of congress of the 28th of February, 1806, entitled, 'An act to suspend the commercial intercourse between the United States and certain parts of the island of St. Domingo.' Laws U. S. vol. 8. p. 11.
 
 
 2
 The libel being filed, and the monition returned executed, the claimant appeared, and having given fide-jussory caution, to respond the costs, offered a plea admitting all the facts charged in the libel, excepting the voluntary carrying of the vessel into the port of Cape Francois, the prohibited port mentioned in the libel, which he denied, and 'thereof put himself on the country.' But the district judge rejected the plea, and ordered the claimant to answer on oath: whereupon the claimant offered the same denial on oath, by way of answer; to the receiving of which the attorney for the United States objected, unless the claimant would make oath to answer truly all interrogatories which might be put to him relative to the cause; but the judge overruled the objection, and received the answer, saying that the United States might except to the answer, in the same manner as to an answer in chancery; or, might reply, setting forth new facts not inconsistent with the libel, and put interrogatories thereupon, as upon the allegations in a bill in chancery, which, if proper and pertinent, must be answered; as was done in the case of Maleu v. Shattuck, (ante, vol. 3. p. 458.)
 
 
 3
 The attorney for the United States filed a replication, and propounded interrogatories, which he prayed might be answered by the claimant viva voce, in open court. To this the claimant objected, but the judge overruled the objection.
 
 
 4
 The Betsey and Charlotte sailed from Alexandria in September, 1806, with a clearance for St. Jago de Cuba.
 
 
 5
 Upon the trial, the attorney for the United States produced and offered evidence, that during the months of August and September in the same year, two other vessels, owned in whole or in part by the claimant, sailed from Alexandria, with clearances for St. Jago de Cuba, and, as well as the Betsey and Charlotte, arrived at Cape Francois. To this evidence the claimant objected, but the judge overruled the objection, and heard the evidence.
 
 
 6
 From the sentence of condemnation by the district judge, the claimant appealed to the circuit court, and new evidence being admitted, the sentence was reversed and restoration awarded. From this sentence, the United States appealed to this court, where witnesses were examined viva voce, both on the part of the United States and on that of the claimant.
 
 
 7
 C. Lee, for the claimant, stated that he should contend,
 
 
 8
 1. That the proceedings ought to have been according to the course of the common law, and the facts ought to have been tried by a jury.
 
 
 9
 2. That the judge ought not to have compelled the claimant to answer upon oath; and,
 
 
 10
 3. That the vessel ought to be acquitted upon the facts of the case.
 
 
 11
 Jones, for the United States, was stopped by the court, who expressed a wish to hear the other side. He wished, however, to be heard, upon the question of putting the claimant to answer upon oath, and was indulged.
 
 
 12
 He observed that this was not a proceeding in personam, but in rem. The United States did not bring in the claimant by process, and compel him to answer upon oath, as is done in chancery cases; but the claimant comes in voluntarily to support his interest, and submits to the jurisdiction of the court. He ought to come with clean hands and a pure heart. If this be a case of admiralty jurisdiction, the proceedings must be according to the course of the civil law, where the practice universally has been to try cases without a jury. Wood's Inst. Civ. Law, 133. 2 Browne's Civ. Law, 248, 249. 413. 415, 416. 1 Browne, 472. 474. Maley v. Shattuck, (ante, vol. 3. p. 458.) 1 Domat. 460. s. 4. Such also was the understanding of the legislature, when they established a fee for the drawing of the interrogatories. Laws U. S. vol. 2. p. 222.
 
 
 13
 The exception in the English statutes applies only to the ecclesiastical courts, and to those interrogatories, the answers to which might subject the party to ecclesiastical censures.
 
 
 14
 But the act of congress upon which this libel is founded does not make it criminal in the person to trade to St. Domingo. It only subjects to forfeiture the property, and renders the party liable upon his bond.
 
 
 15
 Youngs, contra.
 
 
 16
 There can be no case of admiralty jurisdiction, unless it be a case under the law of nations. Cases of revenue or of municipal seizure are not cases of admiralty and maritime jurisdiction.
 
 
 17
 The 9th section of the judiciary act, (vol. 1. p. 53.) merely gives to the district court jurisdiction of cases of seizure, but does not make them cases of admiralty. And in all cases at common law, the trial by jury is guarantied by the constitution of the United States. The act under which this prosecution is commenced, does not direct the form of trial.
 
 
 18
 The district court, as a court of admiralty, is a court of limited jurisdiction; and in this case, the libel does not state that the seizure was made on waters which are navigable from the sea by vessels of ten or more tons burthen. The fact is not alleged which alone could make it a case of admiralty jurisdiction.
 
 
 19
 In England, a seizure for violation of the navigation act is tried by information in the court of exchequer, according to the course of the common law.
 
 
 20
 It is contrary to the principles of the common law to make a man criminate himself.
 
 
 21
 MARSHALL, Ch. J. said the court wished to hear the counsel for the United States on the question of fact.
 
 
 22
 Jones. It is to be understood, then, that the court is satisfied as to the questions of law?
 
 
 23
 MARSHALL, Ch. J. No attempt has been made to distinguish this case from those of The Vengeance, 3 Dallas, 297. and The Sally, (ante, vol. 2. p. 406.) Those cases have settled the law, and unless this case can be distinguished from those, the court does not think an argument necessary.**
 
 
 24
 Jones. It is objected that it does not appear upon the face of the libel that the seizure was made upon waters navigable from the sea by vessels of ten and more tons burthen. But it is stated in the libel that the vessel was more than ten tons burthen, that the seizure was made in the port of Alexandria, and that the vessel had sailed from that port to the West-Indies, and back to Alexandria, from whence it necessarily follows, that the waters of the port of Alexandria are navigable from the sea by vessels of ten and more tons burthen. Besides, this court is bound to take notice of the ports of entry for foreign vessels established by law; and the port of Alexandria is one of those ports.
 
 
 25
 In the case of The Vengeance, the court officially took notice that the bay of Sandy-Hook contained waters navigable, &c.
 
 
 26
 If the jurisdiction appears by necessary inference from what is stated, it is sufficient.
 
 
 27
 C. Lee, contra.
 
 
 28
 By the 3d article of the constitution of the United States, the judicial power of the United States is extended 'to all case of admiralty and maritime jurisdiction.' Congress could not make cases of admiralty and maritime jurisdiction; and under that clause of the constitution they could not give their courts jurisdiction of a case which was not of admiralty and maritime jurisdiction at the time of the adoption of that constitution. The question, then, is, whether, according to the understanding of the people of this country at that time, a seizure of a vessel, within the body of a county, for breach of a municipal law of trade, was a case of admiralty cognizance. It certainly was never so considered in England, from whence we draw all our ideas of admiralty jurisdiction. All seizures in that country for violation of the laws of revenue, trade, or navigation are tried by a jury in the court of exchequer according to the course of the common law. There is nothing in the course of proceedings in rem which requires that they should be in a court of admiralty. A court of common law is as competent to the trial of such cases as a court of admiralty. The high court of admiralty in England exercises no original jurisdiction in revenue cases. It hears only appeals in such cases from the vice-admiralty courts in the colonies, to whom the jurisdiction is given by an act of parliament. 2 Browne, Civil Law, 492. 2 Rob. 189. The Sarah. 4 Inst. 135. 139. 2 Browne, 75. 78. 3 Bl. Comm. 106. Parker, 23. 273.
 
 
 29
 Nor were such cases ever supposed by the people of this country to be rightfully classed among causes of admiralty. It was one of our serious grievances, and of which we complained against Great Britain in our remonstrances to the King, and in our addresses to the people of Great Britain, while we were colonies, that the jurisdiction of the courts of vice-admiralty was extended to cases of revenue. Journals of the old Congress, vol. 1. p. 47. Such being the understanding of the people of this country at the adoption of the constitution, we are to presume that the words 'cases of admiralty and maritime jurisdiction,' did not include cases of seizure like the present. The 9th section of the judiciary act (vol. 1. p. 53.) is to be construed with a reference to the meaning of those expressions in the constitution; and if it cannot, consistently with the force of its terms, be reconciled with the constitution, it must yield to the superior obligation of that instrument. The words of that section of the act, as far as they affect the present question, are, 'and shall also have exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction, including all seizures under laws of impost, navigation, or trade, of the United States, where the seizures are made on waters which are navigable from the sea by vessels of ten or more tons burthen, within their respective districts as well as upon the high seas: saving to suiters, in all cases, the right of a common law remedy, where the common law is competent to give it; and shall also have exclusive original cognizance of all seizures on land, or other waters than as aforesaid, made, and of all suits for penalties and forfeitures incurred under the laws of the United States.' 'And the trial of issues in fact in the district courts, in all causes, except civil causes of admiralty and maritime jurisdiction, shall be by jury.'
 
 
 30
 The word 'including,' means only, moreover, or, as well as.
 
 
 31
 The district court shall have exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction, including, within its exclusive original cognizance, all seizures, &c. It does not mean including within the expression 'all civil causes of admiralty,' &c. If such cases of seizure were civil causes of admiralty and maritime jurisdiction, there was no necessity to enumerate them, because the expression, all civil causes of admiralty, &c. certainly included them. If they were not civil causes of admiralty and maritime jurisdiction, congress could not make them such, nor by forcing them into that class, deprive the citizen of his right to a trial by jury. Congress had no such intention, for in the very same breath they say, 'saving to suiters, in all cases, the right of a common law remedy, where the common law is competent to give it.' We have seen that in all cases of seizure for breaches of the laws of revenue, trade or navigation, the common law is competent to give a remedy; and consequently this suiter is entitled to it.
 
 
 32
 The several acts of congress creating forfeitures for breaches of the laws of revenue, &c. all seem to refer to the exchequer practice, rather than to that of the admiralty.
 
 
 33
 In the act for registering vessels, passed the 31st of December, 1792, (Oswald's edition of the Acts of Congress, vol. 2. p. 134. 144. sect. 4. and 16.) if the owner shall take a false oath, 'there shall be a forfeiture of the vessel, &c. or of the value thereof, to be recovered with costs of suit,' of the person taking the false oath. So in case of the sale of a vessel to a foreigner it shall be forfeited in a certain case, 'provided that if it shall be made appear to the jury before whom the trial for such forfeiture shall be had, that,' &c. and the penalties and forfeitures, under that act were to 'be sued for, presecuted and recovered,' in such courts, &c. as penalties and forfeitures under the act for the collection of duties, &c. Hence it is evident that congress intended that all cases of forfeiture should be tried by jury. The expressions in the act respecting registering of vessels, explain what may otherwise appear doubtful in the act concerning the collection of duties, as to the mode of prosecution.
 
 
 34
 So in the act suspending intercourse with France, vol. 1. p. 245. offending vessels are made liable to be seized, 'and may be prosecuted and condemned in any circuit or district court of the United States, which shall be holden within or for the district where the seizure shall be made.'
 
 
 35
 But by the judiciary act no circuit court could take original cognizance of civil causes of admiralty and maritime jurisdiction; hence it is obvious that congress did not consider such seizures as civil causes of admiralty, &c. The forfeiture also is to accrue to any person 'who will inform and prosecute for the same,' which shows that the proceedings were to be at common law.
 
 
 36
 All the forfeitures under the act for the collection of duties, are to be recovered in the same way. Some of them being cases of seizure on land, must be tried by jury, therefore all must. And in sect. 71. (vol. 4. p. 391.) it is said, 'in actions, suits or informations to be brought, where any seizure shall be made pursuant to this act, if the property be claimed by any person, in every such case the onus probandi shall be upon such claimant.' These expressions all indicate proceedings at common law only.
 
 
 37
 The 89th sect. in p. 427. speaking of the recovery of penalties, clearly refers to suits at common law; and when speaking of forfeitures, it says, 'and all ships, goods, &c. which shall become forfeited in virtue of this act, shall be seized, libelled and prosecuted as aforesaid;' referring to the mode of prosecution pointed out for the recovery of penalties. Here if the word 'libelled' had not been used there could be no doubt. But the expression 'libelled' relates as well to seizures on land, as to seizures on water; but seizures on land must be tried by jury according to the course of the common law. The word libel therefore does not refer exclusively to admiralty proceedings.
 
 
 38
 The Excise Law, vol. 1. p. 313. makes no distinction between seizures made at land, and those made on water.
 
 
 39
 By the 5th amendment to the constitution, no person shall be deprived of property, without due process of law; which means by due process of the common law.
 
 
 40
 By the 7th amendment, in suits at common law the right of trial by jury shall be preserved, i. e. continued as it then was. At that time all municipal seizures were triable at common law.
 
 
 41
 The act prohibiting the intercourse with St. Domingo differs from that under which the Vengeance was prosecuted.
 
 
 42
 There the mode of prosecution was declared to be the same as for penalties and forfeitures under the act for collecting duties; but here no mode of prosecution is prescribed.
 
 
 43
 The act creates two offences.
 
 
 44
 1. Sailing to St. Domingo without being destined for that island.
 
 
 45
 2. Being destined and sailing for a prohibited port without arriving there. The offence of destination is an offence on land and to be tried by the course of the common law. Hence also it may be inferred that the other offence is to be tried in the same manner. No difference is made by the statute.
 
 
 46
 The act requires bonds to be given which are forfeited if the offence has been committed. Suits at common law upon these bonds are now pending. If these had been tried first the facts must have been decided by a jury, and by the 7th amendment of the constitution, 'no fact tried by a jury, shall be otherwise re-examined in any court of the United States than according to the rules of the common law.' The consequence would have been that this case, involving the same fact, between the same parties, could not have been otherwise tried than by a jury. It could not have been the intention of congress that in one case the same fact should be decided by the judge, and in the other by a jury.
 
 
 47
 The case of the Sally was decided upon the authority of that of the Vengeance, without argument; and is therefore of no authority.
 
 
 48
 Rodney, Attorney-General, in reply, was stopped by the court as to the law of the case.
 
 
 49
 MARSHALL, Ch. J.
 
 
 50
 The court considers the law as completely settled by the case of the Vengeance. A distinction has been attempted to be drawn between this case and that, but the court can see no difference. It is the place of seizure, and not the place of committing the offence, which decides the jurisdiction.
 
 
 51
 It has been said the word 'including' means moreover, or as well as; but if this was the meaning of the legislature it was a very embarrassing mode of expressing the idea. It is clear that congress meant to discriminate between seizures on waters navigable from the sea, and seizures upon land or upon waters not navigable; and to class the former among the civil causes of admiralty and maritime jurisdiction.
 
 
 52
 The only doubt which could arise would be upon the clause of the constitution respecting the trial by jury. But the case of the Vengeance settles that point.
 
 
 53
 The sentence of the circuit court was reversed, and that of the district court affirmed.
 
 
 
 **
 C. Lee. I hope to show that this case is distinguishable from those; and to be permitted to argue at large the point of law, that this is not a case of admiralty jurisdiction. I argued the case of the Vengeance, and I know it was not so fully argued as it might have been; and some of the judges may recollect that it was rather a sudden decision
 CHASE, J. I recollect that the argument was no great thing, but the Court took time and considered the case well. The reason of the legislature for putting seizures of this kind on the admiralty side of the court was the great danger to the revenue if such cases should be left to the caprice of juries-