## Case No. 17,916.

### The WITCH QUEEN.

[3 Sawy. 201.] [1]

District Court, D. California. Nov. 30, 1874.

LIEN OF MATERIAL MEN—PROPERTY COVERED.

Where a vessel was supplied with a diving-bell, air-pump, and other apparatus not required for her use as a "navigating ship," but indispensable for the accomplishment of the enterprise in which she was about to engage, *held*, that the lien of the material men extended to all articles belonging to the owner which (not being cargo) have been placed on board for the objects and purposes of this voyage.

In admiralty.

Milton Andros, for libellants.

E. J. Pringle, for claimant.

---

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

HOFFMAN, District Judge. There can, I think, be no doubt that the material and supply men by whom the libels in these cases have been filed, are entitled to a lien under the general maritime law, independently of the state. statute. The vessel, although enrolled here, was owned in New York. The claimant is a New York corporation. The authorities are clear that the question whether a vessel is to be regarded as foreign or domestic within the rule laid down in the case of The General Smith [4 Wheat. (17 U. S.) 438], depends upon the residence of her owner, and not on the place of her registry or enrollment. Hill v. The Golden Gate [Case No. 6,492]; Bond v. The Superb [Id. 1,-624] 2 Pars. Adm. 326, and cases cited.

This vessel must therefore be regarded as a foreign vessel, to which supplies have been furnished in a port other than her home port. For these supplies she is, by the maritime law, liable in rem.

The voyage contemplated by the vessel, and for which supplies were furnished, was a pearl-fishing voyage. As part of her necessary equipment for this enterprise she was provided with a diving-bell, air-pump, and other apparatus—not required for her use as a "navigating ship," but indispensable for the accomplishment of the objects of the particular voyage she was about to enter upon.

It is contended that these articles are not subject to the lien of material men.

No case in point has been cited, but the question seems to be settled by the eighth rule in admiralty of the supreme court.

That rule provides that "in all suits in rem against a ship, her tackle, sails, apparel, furniture, boats, or other appurtenances, if such tackle, sails, apparel, furniture, boats, or other appurtenances are in possession or custody of any third person, the court may, after a due monition to such third person, and a hearing of the cause, if any, why the same should not be delivered over, award and decree that the same be delivered into the custody of the marshal." In what sense the word "appurtenances" is used by the supreme court, cannot be doubtful.

The previous enumeration of "tackle, sails, apparel, furniture and boats," includes everything belonging to the vessel as a "navigating ship." Unless the word "appurtenances" applies to other objects on board belonging to the owners, for the purposes of the voyage, it can have no operation. The word was, no doubt, used advisedly by the supreme court.

In the case of The Dundee, 1 Hagg. Adm. 109, Lord Stowell held that whatever is on board a ship for the objects of the voyage and adventure on which she is engaged, belonging to the ship and not being cargo, constitutes a part of the·ship and "her appurtenances," within the meaning of the statute of 53 Geo. III. c. 139. And this decision was affirmed in the court of king's bench. Gale v. Laurie, 5 Barn. & C. 156. The articles in that case claimed to be "appurtenances" were "boats, fishing tackle, such as harpoon's lines, rockets, casks and various other implements termed fishing stores."

The value of the ship, her tackle, etc., was £2685, and that of her "fishing stores" was £2236. It is plain that if·the "fishing stores" in that case, though their value was nearly equal to that of the ship, were properly considered as part of her "appurtenances," the diving-bell, air-pump, etc., in the case at bar, must be treated as embraced within the same description. The judgment in the case of The Dundee was rendered more than twenty years before the admiralty rules were framed by the supreme court, and the latter must be deemed to have purposely employed the term in the sense which had so long been attached to it by express judicial decisions.

I consider the language of the admiralty rule above cited so clear and decisive, that further discussion of the point is unnecessary. An additional observation however, may be permitted. The common law rule, derived from the civil law, by which the ship-owner was held responsible in solido for all damages caused by the acts of his servants, the master and crew, has both in England and America been modified by statute.

The liability of the owner is now limited to the value of the ship and freight, or, in the language of the statute of 53 Geo. III., c. 139, "the ship, freight and appurtenances." By abandoning these he may discharge himself from all personal liability. The creditors are thus restricted to a particular fund, and being so restricted, the maritime law gives them a privilege or lien upon it.

"When the law," says Mr. Justice Ware, "confines a creditor to a particular fund for his remuneration, it cannot be so absurd as to prohibit him from making that fund available, by laying his hand on and securing it. The maritime law is not chargeable with any such absurdity after it has, on principles of a general policy, restricted him to a particular fund; it not only permits him to proceed directly against it in specie but gives him a privilege against it over the general creditors of his debtor." The Rebecca [Case No. 11,619].

If, then, the lien of the creditor is co-extensive with the liability of the ship-owner, in ascertaining the limits of the latter, we necessarily determine the extent of the former. Any general considerations, therefore, which show that appurtenances of a ship, such as those in question in this case, and in The Dundee, ought not to be exempt from liability, also show that they should be subject to the creditor's lien.

The statutes in England and America, to which I have referred, merely re-establish the ancient rule of the maritime law, which prevailed universally among the commercial nations of the continent. Norwich Co. v.

Wright, 13 Wall. [80 U. S.] 48. These laws were for the encouragement of commerce, but were not intended to favor one class of vessels more than another.

"If a ship," says Lord Stowell, "is run down at sea by a merchant vessel, the wrong-doing vessel is by the act that diminishes the general responsibility, still liable to contribute not only to the extent of herself, but to that of her freight outward and of her freight homeward if contracted for, and for what her owner's property would have paid for freight if it had been liable for freight. But in this class of vessels (i. e. fishing vessels) there is no freight either outward or homeward, nor any owner's property on board, and unless the fishing stores are made responsible in contribution, there is no fund for compensation but the vessel itself, as is actually contended for in the present instance. This class of vessels is highly favored by the British legislature and most deservedly. * * * But surely it can be no part of the intended encouragement that they shall be qualified to do mischief at a cheaper rate than other vessels. If nothing but the vessel itself be liable, that would present a result apparently very unequal and unjust, not only to the injured vessel whose compensation was so much abridged, but likewise to all other vessels which, having committed the like injuries, were subjected to a so much severer retribution." The Dundee, ubi supra.

There is great force in these observations, and if they show that "fishing stores" ought not to be, and are not exempt from liability to contribution, they also, as before remarked, prove that the lien of the creditor must extend to them.

The denial of the lien in the present case would be peculiarly unjust.

It is not disputed that the persons who have furnished the diving-bell, air-pump, etc., have a lien on the vessel for their price. They thus come in concurrently with the other material-men for their proportion of her proceeds. It would be most unjust that the very articles, the supplying of which gave birth to this lien, should be exempted from its operation.

I think, therefore, that the lien in this case extends to all the articles belonging to the owner, which (not being cargo) have been placed on board for the objects and purposes of the voyage and enterprise in which she was about to engage.

The supplies appear to have been ordered in part by the master, with the owner's knowledge and consent, and in part by the latter.

Under such circumstances the supply-men have a lien in rem, for the satisfaction of their claims. The Grapeshot, 9 Wall. [76 U. S.] 129; The Gay, Id. 758; Stringham v. Schloener [Case No. 13,536].

The parties may, very possibly, be able to settle by agreement, the amounts due to the several libellants. Should any controversy arise, it may be brought before the court or referred to the commissioner to take testimony and report.