FRED D. BROWN, Plaintiff, *v.* LEHIGH VALLEY RAILROAD COMPANY, Defendant.

(Supreme Court, Cortland Trial and Special Term, August, 1919.)

Negligence — action for personal injuries — meaning of word " appurtenance " — verdict — when motion for a new trial granted — Boiler Inspection Acts of the United States, § 2 — Federal Employers' Liability Act.

Under section 2 of the Boiler Inspection Acts of the United States, the cab of a locomotive is an " appurtenance " to the boiler.

It was conceded that at the time plaintiff, a locomotive engineer in defendant's employ, was injured, the defendant was engaged in interstate commerce, and it appeared that in order to reverse the lever in operating the locomotive, it was necessary to use considerable force and in doing so his foot slipped into a depression which had worn into the floor of the cab to the extent of one to two feet in circumference and to a depth of from one to one and one-half inches, in which water had collected, the day being stormy, and by reason thereof plaintiff was thrown to the floor and received the injuries complained of. Plaintiff's request that the case be submitted to

the jury under the Boiler Inspection Acts upon the ground that the cab of the locomotive was an appurtenance to the boiler under said statute was denied and the case submitted to the jury under the Federal Employers' Liability Act. Defendant had the verdict for no cause of action. Upon granting a motion for a new trial made on the ground of plaintiff's request to go to the jury upon the question whether the word " appurtenance " in the Boiler Inspection Acts included the cab of the locomotive and the floor thereof, *held,* that the cab of the locomotive was such an appurtenance.

ACTION to recover damages for negligence.

Thomas E. Courtney, for plaintiff.

Cobb, Cobb, McAllister, Feinburg & Heath, for defendant.

KELLOGG, A. L., J.    This is an action brought by the plaintiff, Fred D. Brown, against the defendant, Lehigh Valley Railroad Company, to recover damages by reason of injuries which he claims to have sustained while in the defendant's employ, as an engineer, on its railroad, and in charge of one of its locomotives, on the 12th day of January, 1915.

It is conceded that, at the time the plaintiff contends he received his injuries, the defendant was engaged in interstate commerce.

It appears that it became necessary for the plaintiff, in operating the locomotive, to reverse the lever used in applying the power, and for that purpose he had placed his right foot on a peg, as he designated it, within the cab, his left foot on the floor thereof, and both hands on the reverse lever; that, in order to move the lever, or throw it over, it was necessary for him to use considerable force, and in so doing, his left foot slipped into what he described as a hollow spot or depression which had worn in the floor of the cab, to the extent

of one to two feet in circumference, and to a depth at one point of from one to one and one-half inches, and that by reason thereof he was violently thrown to the floor, and received the injuries of which he complains. He claims that the day being stormy, dampness and water had collected in this hollow place or depression on the floor of the cab at the point where his foot slipped.

At the completion of the evidence the plaintiff, through his counsel, requested that the court submit the case to the jury under the Safety Appliance or Boiler Inspection Acts of the United States, upon the ground that the cab of the locomotive in question was an appurtenance to the boiler under those acts. This request was denied and exception taken. The case was submitted to the jury under the Federal Employers' Liability Act, and was substantially as follows: " If you find the fact to be that the risk was such an obvious one, that it was so obvious to any person familiar with those matters that any reasonable man, with familiarity would have appreciated it, and would have known of it, and he knowingly assumed the risk of it, then, of course, the plaintiff is not entitled to recover. If you find that the defendant was negligent, and that the plaintiff did not assume the risk, then you come down to the question as to whether this accident was caused in part by the plaintiff's own negligence, and, of course, if it was, the amount of his damages which he might otherwise recover must be diminished exactly in proportion to the amount of the negligence attributable to him. If you reach the conclusion that the defendant and its employees were not negligent, you must find for the defendant. If you find that it was the plaintiff himself who was negligent, and that he was guilty of all of the negligence, he cannot recover. If you come to the conclusion that both the defendant

and its servants were negligent, but the plaintiff assumed the risk, you must find for the defendant. If, on the other hand, you find that the defendant was negligent, and the plaintiff did not assume the risk, and he was not guilty of the entire negligence, then he is entitled to damages. If you find the injury was due in part to plaintiff's negligence, then the amount of damages must be diminished just exactly in proportion to the amount of negligence attributable to the plaintiff. If the plaintiff was not guilty of any negligence at all, and the accident was caused solely by the negligence of the defendant, he is entitled to the full amount of damages which he has sustained, if any.''

The jury found a verdict in favor of the defendant, no cause of action, and upon the rendition of the verdict the plaintiff made a motion for a new trial upon the ground that he requested to go to the jury upon the question as to whether, by the use of the word boiler, in the February, 1911, act of the United States, and in the use of the word appurtenance thereto it included the cab of the locomotive and the floor thereof. This motion was entertained.

If the plaintiff were correct in his theory that the cab of the locomotive was an appurtenance to the boiler, under and pursuant to the provisions of the Boiler Inspection Acts of the United States, which became a law on the 17th day of February, 1911, then the jury was misdirected as to the law of the case, and the plaintiff is entitled to a new trial, for the reason that section 8 of the act provides that: ''Any employee of any such common carrier, who may be injured by any locomotive car or train in use contrary to the provisions of this act, shall not be deemed thereby to have assumed the risk thereby occasioned, although continuing in the employment of such carrier after the unlaw-

ful use of such locomotive or car or train has been brought to his knowledge."

The Federal Employers' Liability Act further provides that: " In all actions hereafter brought against any such common carrier by railroad, under or by virtue of any provisions of this Act, to recover damages for personal injuries to an employee, or where such injuries have resulted in his death, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee, provided that no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees, contributed to the injury or death of such employee."

Section 2 of the Boiler Inspection Law provides as follows: " From and after the first day of July, nineteen hundred and eleven, it shall be unlawful for any common carrier, its officers or agents, subject to this Act to use any locomotive engine propelled by steam power in moving interstate or foreign traffic unless the *boiler* of said locomotive and *appurtenances* thereof are in proper condition and safe to operate in the service to which the same is put, that the same may be employed in the active service of such carrier in moving traffic without unnecessary peril to life or limb, and all boilers shall be inspected from time to time in accordance with the provisions of this Act, and be able to withstand such test or tests as may be prescribed in the rules and regulations hereinafter provided for."

The act of February 17, 1911, was amended by an act approved March 4, 1915, to take effect six months

after its passage, as follows: " An Act to promote the safety of employees and travelers upon railroads by compelling common carriers engaged in interstate commerce to equip their locomotives with safe and suitable boilers and appurtenances thereto, approved February seventeen, nineteen hundred and eleven, shall apply to and include the *entire* locomotive and *tender and all parts and appurtenances thereof."*

Very serious consideration was given during the course of the trial to the proposition as to whether or not the cab of a locomotive was an appurtenance to the boiler under the act of February 17, 1911.

From the definite and precise wording employed in the amendment, approved March 4, 1915, and the evident intention to make each and every part of the locomotive, including the tender, a part of the boiler, gave the court the impression that doubt must have arisen in the courts as to the definition of the word appurtenance, with respect to the use of the word boiler, and that the word appurtenance, with reference to the word boiler, in the act, had been strictly construed. In other words, referred only to the valves, pipes and appliances or attachments of metal thereon or connected thereto. There were no means at hand, or opportunity, to consult authorities. The sole question, therefore, for consideration here is as to whether or not, under the federal act of February 17, 1911, in the use of the word appurtenance, in section 2 thereof, it was intended to or did include the cab of the locomotive as a part of the boiler. The amendatory act approved March 4, 1915, has no application here, as the accident in question occurred prior thereto.

A studious examination of the proceedings and debates of the congress, when this act was under consideration, fails to throw any light whatsoever on the question. I am not able to find a single adjudicated

case, either in our state or United States courts, wherein it has been determined what, if anything, it was intended to include, as part of the boiler of a locomotive, in the use of the word appurtenance.

Appurtenance is defined by Webster to be: "That which belongs to something else; an adjunct; an appendage; an accessory; something which belongs or appertains to another thing; an appurtenance."

Appurtenance is stated by the Century Dictionary to be: "That which appertains or belongs to something else; something belonging to another thing, as principal; an adjunct; an appendage; an accessory, and is to supply or equip; belonging."

Appurtenance is a thing belonging to another, as principal, and which will pass as an incident to the principal thing; there must exist a propriety of relation between the principal or dominant subject and the accessory or adjunct; anything necessary to the enjoyment of a thing. Bouvier L. Dict. (1897 ed.) 1581.

Appurtenance is an adjunct; an appendage; an addition; that which belongs to something else; that which belongs to another thing; something annexed to another thing more worthy; a thing used with and related to or dependent on another thing more worthy and agreeing in its nature and quality with the thing whereunto it is appendant; that which belongs to something else, as an adjunct or appendage of such moment that the thing to which it attaches cannot be enjoyed without its use, and which passes as an incident to the principal thing. 4 C. J. 1466.

The law applicable to fixtures will apply with equal force to appurtenances. *Frey* v. *Drahos.* 6 Neb. 1–5; 29 Am. Rep. 353.

Things which naturally and fitly form a subordinate

part and belong to a whole system; contributory adjuncts. *In re Hudson,* 11 Ont. W. R. 912.

The word appurtenance may be used in a sense broader than its technical legal meaning, as, for example, in the sense of an addition. *California Title Ins. Co.* v. *Pauly,* 111 Cal. 122.

The true test as to whether a thing is an incident or an appurtenance seems to be that propriety of relation between the principal and adjunct, which is to be ascertained by considering whether they agree in nature and quality so as to be capable of union without incongruity, and is actually and indirectly necessary to the full enjoyment of the property. *Barrett* v. *Bell,* 82 Mo. 110–114; 4 C. J. 1467.

Whatever is needed to complete the structure and make it capable of performing its intended function is an appurtenance. *Gashe* v. *Ohio Lumber Co.,* 5 Ohio D. (N. P.) 132.

The term appurtenance is ordinarily confined to incorporeal rights, but it is also employed to designate things of a corporeal nature, as, for instance, such expressions as appurtenances of a railroad and appurtenance of a vessel. 4 C. J. 1468.

The term appurtenant has no inflexible meaning, and as a noun is defined as that which belongs to another thing; a thing used with and related to or dependent upon another thing, and agreeing in its nature and quality with the thing whereunto it is appendent or pertinent.

As an adjective it is used in the sense of annexed or belonging to, attached to or belonging to, belonging to or pertaining to, accessory or incident to. 4 C. J. 1471.

Small buildings are the appurtenances of a mansion. 1 Words & Phrases, 477; *Carpenter* v. *Leonard,* 5 Minn. 155, 168.

The word appurtenance signifies belonging to or

pertaining to as of right. It is a word of broader significance than "annexed" which is described by lexicographers to mean joined at the end; connected with; affixed. 1 Words & Phrases, 478; *Treasurer of Dauphin Co.* v. *St. Stephens Church,* 3 Phila. 189, 190.

Appurtenance denotes annexed, or belonging to. *Empire Land & Canal Co.* v. *County Treas.,* 1 Colo. App. 205; 28 Pac. Repr. 482, 484.

Appurtenances, as used in giving a lien for constructing, altering or repairing houses, buildings, or appurtenances, mean such structures as are necessary to the use and enjoyment of the premises, and include buildings on the opposite side of the street from the main building, and designed to be used in connection therewith. 1 Words & Phrases, 480; *Carpenter* v. *Leonard, supra;* Gil. 119, 132.

An appurtenance is a thing used with, related, or dependent upon, another thing more worthy, and agreeing in its nature and quality with the thing whereunto it is dependent or appurtenant. *Jarvis* v. *Seele Milling Co.,* 173 Ill. 192; 50 N. E. Repr. 1044, 1045.

Appurtenants are not necessarily of an incorporeal nature, but things corporeal may be pertinent. If one has a house and land, and conveys water to the house by pipes through the land, and thereafter sells the house with appurtenances to one, and the land to another, the pipes pass with the house. *Jackson* v. *Striker,* 1 Johns. Cas. 284, 291.

Appurtenances include any erection on property appropriate to be used in pursuance of the business to which the property is to be applied and thereby includes the erection of a windmill with a tank and pump. *Phelps & Bigelow Windmill Co.* v. *Shay,* 32 Neb. 19; 1 Words & Phrases, 481.

A thing is appurtenant to something else when it

stands in relation of an incident to a principal, and is necessarily connected in the use and enjoyment of the latter. 1 Words & Phrases, 482; *Lawrence* v. *Hennessy,* 165 Mo. 659; 67 S. W. Repr. 717; cited *Fitzpatrick* v. *Mik,* 24 Mo. App. 435; *Missouri Pac. R. R. Co.* v. *Maffitt,* 94 Mo. 56; 60 S. W. Repr. 600; *Wilson* v. *Beckwith,* 117 Mo. 61; 22 S. W. Repr. 639; *Humphreys* v. *McKissock,* 140 U. S. 304.

The granting of a piece of land with the appurtenances will carry the dwelling house and adjoining buildings, and also the orchard and garden. 1 Words & Phrases, 483; *McShane* v. *Carter,* 80 Cal. 310; 22 Pac. Repr. 178.

Appurtenance, as used in a devise of a grist mill, with its appurtenances, construed to include everything necessary for the sale and free enjoyment of the grist mill, and requisite for the support of the establishment, such as a dam, water and race leading to the mill, a proper portion of ground before the mill, for the loading or unloading of wagons, for, without these appurtenances, the grist mill could not be worked. 1 Words & Phrases, 485; *Blaine's Lessee* v. *Chambers,* 1 Serg. & R. 169.

As applied to railroads the term appurtenant, in its legal common acceptation, applies to a thing as belonging to, accessory, or incident to some other thing. 1 Words & Phrases, 485; *Wilson* v. *Ward Lumber Co.,* 67 Fed. Repr. 674.

With respect to shipping, appurtenances, as used in the phrase of appurtenances of a vessel, must not be construed with a mere reference to the naked idea of a ship, for that which would be an incumbrance to a ship one way employed, would be an indispensable equipment to another. With regard to a fishing vessel, the term appurtenances includes all the tackle and furniture which are necessary for the proper operation

of the vessel, for the purposes for which it was designed. 1 Words & Phrases, 486; *Swift* v. *Brownell,* 23 Fed. Cas. 554.

The phrase " ship and her appurtenances," as used in 53 Geo. III, 159, whereby the owner of the ship and its appurtenances is liable to the extent of the value thereof, for damages to another ship, means whatever is on board of the ship, for the object of the voyage and adventure for which she is engaged. *Gale* v. *Laurie,* 5 Barn. & C. 156.

Where a wharf passed as appurtenant to a lot, flats built on tide lands, extending to deep water, when necessary to the use of the wharf will pass with the wharf as an appurtenance thereto. *Brown* v. *Carkeek,* 14 Wash. 443; 44 Pac. Repr. 887.

A chronometer is to be regarded as appurtenant to a ship. *The Frolic,* 148 Fed. Repr. 921, citing Abbott Merchant Ships & Seamen (14th ed.), 33, 280; *Richardson* v. *Clark,* 15 Mo. 421; *The Witch Queen,* 3 Sawy. 201; 30 Fed. Cas. 396.

An appurtenance is a thing belonging to and going with the transfer of a principal thing, used with, dependent upon the thing, and essential to it. 1 Words & Phrases (2d series), 261; *Shrader* v. *Gardner,* 70 W. Va. 780; 74 S. E. Repr. 990.

The word " appurtenant " means attached to or belonging to, and, in the law, the term appurtenance usually means something appertaining to another thing as principal, and passing as an incident to such thing. *Whittelsey* v. *Porter,* 82 Conn. 95; 72 Atl. Repr. 593.

The term " appurtenance " includes everything necessary to the beneficial use of the property, as applied to land. *Greenblatt* v. *Zimmerman,* 132 App. Div. 283; 1 Words & Phrases (2d series), 263.

Where certain floors of a building were leased with

the appurtenances, a furnace, constituting the only means for heating the leased premises, was included in the word appurtenance. *Stevens* v. *Taylor,* 111 App. Div. 561; 1 Words & Phrases (2d series), 262.

The thing appurtenant need not be one of necessity. It may be one of convenience only, but it must be connected in use with the principal thing. In other words a thing is appurtenant to something else only when it stands in relation of an incident to a principal, and is necessarily connected with the use and enjoyment of the latter. *Hunstock* v. *Limburger,* 115 S. W. Repr. (Tex.) 327; quoting and adopting definition in *Humphreys* v. *McKissock,* 140 U. S. 304; 11 Sup. Ct. Repr. 779; *Green* v. *Collins,* 86 N. Y. 246; *Tabor* v. *Bradley,* 18 id. 109; *Swazey* v. *Brooks,* 34 Vt. 451; 1 Words & Phrases (2d series), 464.

The cab of a locomotive is the hooded or covered part which protects the engineer and fireman from the weather, and is the place necessarily occupied by the engineer in its operation by means of levers or throttles and appliances, wherein the steam power developed by the boiler is applied for its propulsion and reversal. The operating throttles or levers connect with every working part of the locomotive, including the main steampipe, within the boiler, which forms the source of power. The throttles or levers are worked from the engineer's side of the cab, and are within reaching distance. The cab is firmly constructed upon the rear end or on the side of the boiler, and is the place where the engineer ordinarily gives and receives signals.

I am of the opinion that the cab of a locomotive is an appurtenance to the boiler, and is not only essential to it, but necessarily connected with its use and operation.

It follows, therefore, that the motion for a new trial

herein should be granted, with ten dollars costs to abide the event.

Motion granted, with ten dollars costs to abide event.