[L. A. No. 16192.   In Bank.—Oct. 20, 1941.]

E. C. MOORE et al., Respondents, v. PURSE SEINE NET, Defendant; C. J. HENDRY COMPANY (a Corporation) et al., Appellants.

836

Alfred T. Cluff, Sawyer & Cluff, Arch E. Ekdale and Cluff & Bullard for Appellants.

Earl Warren, Attorney General, and Eugene M. Elson and Paul D. McCormick, Deputies Attorney General, for Respondents.

TRAYNOR, J.—California law enforcement officers seized a large purse seine fishing net in use on the fishing boat ''Reliance'' in navigable waters of the Pacific Ocean adjacent to Catalina Island. The taking of fish by net within these waters is unlawful. (Fish and Game Code, sec. 842.) The California Fish and Game Commission filed a petition in the superior court asking for a judgment to declare the net a public nuisance forfeited to the state, and to order its destruction or sale under the provisions of section 845 of the Fish and Game Code. A judgment of forfeiture issued from

which the owners of the net have appealed. They do not challenge the power of the state to enact legislation regulating fishing within territorial waters and providing for the forfeiture of nets used in an illegal manner, but they contend that the state court has no jurisdiction to proceed in the action because it is a maritime cause of action within the exclusive admiralty jurisdiction of the federal courts.

Section 9 of the Judiciary Act of 1789 and later statutes re-enacting the same provision (Judicial Code, secs. 24 (2), 256; 28 U. S. C. A., § 41, subd. 3, § 371) provide that the federal district courts shall have exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction, ''saving to suitors in all cases the right of a common-law remedy where the common law is competent to give it. . . . '' (See *The Moses Taylor,* 4 Wall. 411 [18 L. Ed. 397].) The present proceeding involves a maritime cause of action. If the property proceeded against is an integral part of the vessel or its equipment and is seized on navigable waters the cause is maritime. (*Turner* v. *United States,* 27 Fed. (2d) 134; *The Buffalo,* 148 Fed. 331; *The Witch Queen,* 3 Sawy. 201 [30 Fed. Cas. 396, No. 17,916].) This fact alone, however, does not establish that the action is within the exclusive jurisdiction of the federal courts. The saving clause of the Judiciary Act makes it clear that a case involving a maritime cause of action may properly be brought in a state court if the type of remedy pursued is traditionally within the jurisdiction of the common law courts. Even though the right to sue is created by a recently enacted state statute, it is within the saving clause so long as the remedy is of a type recognized at common law (*Red Cross Line* v. *Atlantic Fruit Co.,* 264 U. S. 109 [44 Sup. Ct. 274, 68 L. Ed. 582]), including equity. (*Knapp, Stout & Co.* v. *McCaffrey,* 177 U. S. 638 [20 Sup. Ct. 824, 44 L. Ed. 921].)

If the action is of a type that was cognizable in both admiralty and common law courts the state courts retain a concurrent jurisdiction with the federal admiralty courts to entertain the action. (*Reynolds* v. *Steamboat Favorite,* 10 Minn. (Gil. 190, 193) 242; *New Jersey Steam Nav. Co.* v. *Merchant's Bank,* 6 How. 344, 390 [12 L. Ed. 465]; *Percival* v. *Hickey,* 18 Johns. (N. Y.) 257 [9 Am. Dec. 210]; 1 Kent Com. 367, 377; 1 Story, Constitution, 533. See

*American Steamboat Co.* v. *Chase,* 16 Wall. 522 [21 L. Ed. 369]; *Sherlock* v. *Alling,* 93 U. S. 99 [23 L. Ed. 819]; *Fisher* v. *Boutelle Trans. & Towing Co.,* 162 Fed. 994; *International Nav. Co.* v. *Lindstrom,* 123 Fed. 475 [60 C. C. A. 649]; *The Harrisburg,* 119 U. S. 199, 213 [7 Sup. Ct. 140, 30 L. Ed. 358]; *The Hamilton,* 207 U. S. 398 [28 Sup. Ct. 133, 52 L. Ed. 264]; *Aurora Shipping Co.* v. *Boyce,* 191 Fed. 960, 966 [112 C. C. A. 372].) ''The saving clause of the Judiciary Act and of the Judicial Code does not contemplate admiralty remedies in a common law court. Its meaning is that in cases of concurrent jurisdiction in admiralty and at common law, the jurisdiction in the latter is not taken away.'' (Benedict, Admiralty (5th ed.), sec. 23. See *Knapp, Stout & Co.* v. *McCaffrey, supra; Red Cross Line* v. *Atlantic Fruit Co., supra.*) The fact that federal forfeiture statutes, similar to that of California, require that a proceeding thereunder against a vessel or its equipment be brought in a federal district court sitting as a court of admiralty (see *The Sarah,* 8 Wheat. 391 [5 L. Ed. 644]; *United States* v. *The Betsy and Charlotte,* 4 Cranch 443 [2 L. Ed. 673]; *The Confiscation Cases,* 7 Wall. 454 [19 L. Ed. 196]; *United States* v. *La Vengeance,* 3 Dall. 297 [1 L. Ed. 610]; *United States* v. *Grundy,* 3 Cranch 337 [2 L. Ed. 459]; *The Palmyra,* 12 Wheat. 1 [6 L. Ed. 531]), does not prevent California from conferring jurisdiction upon her courts to proceed with such cases under a California statute if the type of action is a traditional common law remedy.

It is therefore necessary to determine whether this forfeiture proceeding by the state is the type of action that was cognizable in a common law court. In 1789 when the Judiciary Act was enacted there had been little development of the common law in federal or state courts of the United States. An examination of the English common law as it existed before that time must therefore be made.

In determining the jurisdiction of the English common law courts, acts of Parliament defining that jurisdiction must be taken into account. It is well established in California that the common law of England includes not only the *lex non scripta* but also the written statutes enacted by Parliament. (*Martin* v. *Superior Court,* 176 Cal. 289 [168 Pac. 135, L. R. A. 1918B, 313]; *People* v. *Richardson,* 138 Cal. App. 404 [32 Pac. (2d) 433].) Other jurisdictions are

in accord with this view, most of them holding that English statutes enacted prior to the time of separation of the colonies from the Mother Country in 1776 are included within the English common law. (See cases cited in 78 U. of Pa. L. Rev. 195; 11 Am. Jur. 166; 22 L. R. A. 508, et seq.)

Appellants' contention that the present proceeding is of a type unknown to the common law courts because it is an action *in rem* against the net itself rather than *in personam* against the owners of the net is unsound. While it is true that actions in common law courts are usually *in personam* as contrasted to the *in rem* proceedings of the courts of the Admiralty, it has long been established that an action *in rem* can be brought by the state in an ordinary common law court for the forfeiture of goods or articles used in violation of laws imposing such a penalty even though the articles thus proceeded against are ships, appurtenances thereof, or cargoes. The Statute of 12 Car. II., c. 18 (7 English Statutes at Large), enacted in 1660 provided that all imports to and exports from England and its possessions must be in English ships "under the penalty of the *forfeiture and loss of all the goods and commodities* which shall be imported into or exported out of any the aforesaid places in any other ship or vessel, *as also of the ship or vessel, with all its guns, furniture, tackle, ammunition and apparel;* one third part thereof to his Majesty, his heirs and successors; one third part to the governor of such land, plantation, island or territory where such default shall be committed, in case the said ship or goods be there seized, or otherwise that third part also to his Majesty, his heirs and successors; and the other third part to him or them who shall seize, inform or *sue for the same in any court of record,* by bill, information, plaint or other action, wherein no essoin, protection or wager of law shall be allowed. . . . " (Italics added.) This statute, providing for the institution of forfeiture proceedings in any court of record against ships and cargoes used in violation of the act clearly authorized a remedy by forfeiture in the common law courts. In the case of *Roberts* v. *Withered* (1696), 5 Mod. 193; 12 Mod. 92; 1 Salk. 223, it was held that in proceeding to forfeit a ship and cargo under the above act, an action of detinue would properly lie in the court of the King's Bench. " . . . for my Lord Coke (b) was of the opinion, that the

bringing a replevin is a claim in law, and that the property is vested thereby in the plaintiff. So by navigating contrary to the act, the property is divested out of the former owners; and by this action now brought, it is vested in the plaintiff, and therefore he may bring detinue for it." This decision was approved in *Wilkins* v. *Despard,* 5 Durnf. & East's Rep. 112.

Such forfeiture to the state of illegally used articles has continued as an accepted common law procedure. The statute of 13 & 14 Car. II., c. 7, 11, 18, 20 (8 English Statutes at Large), provided for the forfeiture in common law courts of various articles used in violation of law, certain types of vessels being included in chapter 11. The Customs Consolidation Act of 1876 (39 & 40 Vict., c. 36) imposes, as part of the penalty for smuggling, forfeiture to the Crown of the goods smuggled and the *ship, boat,* carriage, or horse used for their conveyance. Chapter 36, par. 218, of the act provides: "All duties, penalties, and forfeitures incurred under or imposed by the Customs Acts . . . may be sued for, prosecuted, determined, and recovered by action, information, or other appropriate proceeding in the *High Court of Justice in England, the superior courts of common law* at Dublin or Edinburgh . . . or by information in the name of some officer of Customs or Excise, before *one or more justice or justices* in the United Kingdom, the Isle of Man, or the Channel Islands. . . . " (Italics added.) (See 9 Halsbury's Laws of England 377; *Frailey* v. *Charlton* (1920), 1 K. B. 147.) While this statute is of recent origin, it indicates that at the present time in England forfeiture proceedings against vessels and cargo are instituted in common law courts rather than courts of admiralty. (See also Dangerous Drugs Act, 1920, 10 & 11 Geo. 5, c. 46, s. 14 as amended, 1923, 13 & 14 Geo. 5, c. 5, s. 2 (1); 22 Halsbury's Laws of England 399.)

In the United States the federal government from early times has provided for the forfeiture of certain articles used in violation of law. (See 14 Stat. L. 156; 14 Stat. L. 151, 165; 13 Stat. L. 240; 14 Stat. L. 178; 12 Stat. L. 319; *The Sarah,* 8 Wheat. 391. See also Internal Revenue Code, 26 U. S. C. A. secs. 2154, 2155 et seq., 3720 et seq.; 19 U. S. C A. sec. 1584.) California has likewise exacted forfeiture of various illegally used articles (Pen. Code, sec. 325 (1872); Health and Safety Code, secs. 12304, 12305 [former Stats.

1887, ch. 95, p. 110]; Health and Safety Code, sec. 11610.) The early federal statutes required that in the trial of cases involving seizures made on waters navigable by vessels of ten tons burden and upward the court sit as a court of admiralty (see *The Sarah, supra; Reynolds* v. *Steamboat Favorite, supra,* 193), but the federal cases themselves recognize that such forfeiture proceedings constituted a valid remedy at common law. Thus, in the case of *The Palmyra, supra,* Mr. Justice Story stated: ''It is well known that at the common law, in many cases of felonies, the party forfeited his goods and chattels to the crown. . . . In the contemplation of the common law, the offender's right was not divested until the conviction. But this doctrine never was applied to seizures and forfeitures created by statute, *in rem,* cognizable on the revenue side of the exchequer. The thing is here primarily considered as the offender, or rather the offense is attached primarily to the thing.'' (See *United States* v. *Five Boxes of Asafoetida,* 181 Fed. 561; *The Sarah, supra.*)

There are cases which state that an *in rem* action against a vessel is not a common law remedy and is therefore within the exclusive admiralty jurisdiction of the federal courts. (*The Moses Taylor, supra; The Hine* v. *Trenor,* 4 Wall. 555 [18 L. Ed. 451]; *The Glide,* 167 U. S. 606 [17 Sup. Ct. 932, 42 L. Ed. 296]; *The Belfast,* 7 Wall. 624 [19 L. Ed. 266].) These cases, however, were concerned with types of *in rem* proceedings that were foreign to the common law. They are authority for the rule that a state court can have no jurisdiction over an action *in rem* against a vessel when such action has no counterpart in the common law courts. (See *Knapp, Stout & Co.* v. *McCaffrey, supra.*) But these cases are not controlling in circumstances where the common law provided an analogous remedy. As stated by the Supreme Court of Minnesota in *Reynolds* v. *Steamboat Favorite, supra:* ''In England in the court of exchequer, and in the United States in the district courts, in seizures made on land for violation of the revenue laws, the proceedings are *in rem,* according to the course of the common law. Though a proceeding is *in rem,* it is not necessarily a proceeding or cause in admiralty. *The Sarah,* 8 Wheat. 391 [5 L. Ed. 644]; *United States* v. *422 Casks of Wine,* 1 Peters, 547 [7 L. Ed. 257]; 1 Kent Com. 374–5–6.''

The courts of other jurisdictions with statutes similar in nature to the one now under consideration have enforced such forfeitures under the assumption that they had jurisdiction to do so. (See *State* v. *Umaki,* 103 Wash. 232 [174 Pac. 447]; *State* v. *Mavrikas,* 148 Wash. 651 [269 Pac. 805]; *Sterrett* v. *Gibson,* (Tex. Civ. App.) 168 S. W. 16, aff'd 172 S. W. 1198. See also *Mirkovich* v. *Milnor,* 34 Fed. Supp. 409; *Ieck* v. *Anderson,* 57 Cal. 251 [40 Am. Rep. 115].) In the case of *The Bessie Mac,* 21 Fed. Supp. 220, a federal district court held that forfeiture proceedings under a Washington statute similar in nature to that of California were maritime in nature and should therefore be brought in a federal court. The court, however, failed to consider whether such proceedings, though maritime, constituted a common law remedy within the saving clause of the Judiciary Act.

It is therefore clear that the forfeiture of illegally used nets authorized by the California statute involves a traditional common law remedy cognizable in the state courts, even though the statute was enacted long subsequent to the Judiciary Act. (*Red Cross Line* v. *Atlantic Fruit Co.,* *supra.*)

Appellants contend that the petition for forfeiture filed by the Fish and Game Commission did not allege that the purse seine net in question was used for the taking of fish and therefore failed to state a cause of action. The petition stated, however: "That said purse seine net . . . is and was at all times herein mentioned an appliance used for the taking of fish" and "was . . . used in violation of the provisions of Section 842 of the Fish and Game Code of the State of California." This constitutes a sufficient allegation that the net was illegally used to catch fish.

Since the judgment of forfeiture in the instant case pronounced the net in question a public nuisance pursuant to section 845 of the Fish and Game Code which declares any net used in violation of law to be a public nuisance, the action is one to abate a nuisance and therefore within the appellate jurisdiction of the District Courts of Appeal. (Cal. Const., art. VI, sec. 4b.) Although the original appeal was improperly transferred to this court by the District Court of Appeal of the Second Appellate District, this court on November 20th, 1939, transferred the cause to the District Court of Appeal of the First Appellate District. The case

is now here by virtue of an order granting a hearing after decision by that court. This court therefore has jurisdiction for all purposes. (Cal. Const., art. VI, sec. 4c.)

The judgment is affirmed.

Gibson, C. J., Curtis, J., and Carter, J., concurred.

Appellants' petition for a rehearing was denied November 17, 1941. Edmonds, J., voted for a rehearing.