## ARMSTRONG'S FOUNDRY.

1. A full pardon and amnesty by the President for all offences committed by the owner of property seized under the act of Congress of August 6th, 1861, "to confiscate property used for insurrectionary purposes," and which makes property used in aid of the rebellion, with the consent of the owner, subject to seizure, confiscation, and condemnation, relieves such owner from the forfeiture of the *property* seized so far as the right accrues to the United States.

2. The proceedings under the act relating to a seizure of land, present a case of common law jurisdiction, the proceedings in which are to be conformed, in respect to trial by jury and exceptions to evidence, to the course of the common law, and a final decision in which can be reviewed here only on writ of error.

APPEAL from the Circuit Court for the Eastern District of Louisiana, the proceeding below being one for condemnation of property as used in aid of the rebellion, and resembling in its general features the case just disposed of. It was thus:

An act of Congress passed August 6th, 1861, "to confis-

---

* The Vengeance, 3 Dallas, 297; The Sarah, 8 Wheaton, 391.

cate property used for insurrectionary purposes,"* enacted that property used in aid of the rebellion with consent of the owner, should be the lawful subject of *prize* and *capture* wherever found, and made it the duty of the President to cause it " to be seized, confiscated, and condemned." It enacted further that " such *prizes* and *captures* shall be condemned in the District or Circuit Court of the United States having jurisdiction of the amount, or in *admiralty* in any district in which they may be seized, or into which they may be taken," &c.    And the attorney-general or any district attorney was to institute proceedings of condemnation himself, ·or by aid of an informer.

Under this act a libel of information was filed in the Circuit Court of the United States for the Eastern District of Louisiana, in which it was charged. that certain property in New Orleans, known as Armstrong's Foundry, had been seized as forfeited to the United States by reason of having been used, with the consent of the owner, in aid of the rebellion.    This libel closed with the usual prayer for condemnation.    A claim was interposed by John Armstrong as owner, and another claim was interposed by the Citizens' Bank as mortgagee.    Armstrong also pleaded the amnesty offered by President Lincoln, and his acceptance of it and compliance with the terms.    On the hearing the plea of pardon was rejected, and a decree of condemnation was rendered.    Armstrong alone appealed.

Subsequently, and while the cause was pending in this court, the President of the United States granted to " the said *John Armstrong* a full pardon and *amnesty* for all offences by him committed, arising from participation, direct or implied, in the said rebellion, conditioned as follows."    Certain conditions were annexed.    At this term Armstrong was allowed, in conformity with the usual course in admiralty cases, to plead the new matter, and to file with his plea a statement of facts agreed between his counsel and the Attorney-General, showing, among other things, that he had complied with all the conditions of the pardon granted to him.

* 12 Stat. at Large, 319.

The question now on the appeal was, whether this pardon relieved from forfeiture the *property* seized.

*Mr. Stanbery, Attorney-General, and Mr. Ashton, special counsel for the United States:*

1. "A pardon," this court declared in *Ex parte Garland*,* "reaches both the *punishment* prescribed for the *offence* and the guilt of the *offender;* and when the pardon is full, it releases the *punishment*, and blots out of existence the guilt, so that in the eye of the law the *offender* is as innocent as if he had never committed the *offence*. The effect of this pardon, then, is to relieve the petitioner from all penalties and disabilities attached to the *offence* of treason committed by his participation in the rebellion." But this is the extent of a pardon. It cannot reach a forfeiture of *property* imposed, in virtue of the unlawful predicament in which the property may be found.

Now, the act of August 6th, 1861, does not affect property with liability to condemnation as a punishment for any offence of the owners, but as a means of suppressing the insurrection, then flagrant, by depriving those engaged therein of property subject to their control, and dedicated to their uses. The property is made the "lawful subject of prize and capture wherever found." These words draw the property in question within the category of enemy property, and establish a rule of *capture*.

2. But however affecting the interest of the United States, it cannot operate to remit the moiety which accrues to the informer. He has acquired a property in his part of the penalty.†

3. Under a statute of municipal forfeiture, such as this, proceedings for the condemnation of property seized on land, without the admiralty and maritime jurisdiction of the United States, are, *ex necessitate rei*, according to the course

---

* 4 Wallace, 380.

† 4 Blackstone's Commentaries, 309; 2 Hawkins, 6, 392; Comyn's Digest, Pardon, F.

of the common law.*   If reversed, the proceedings should follow that course.

*Mr. Humphrey Marshall, contra.*

The CHIEF JUSTICE delivered the opinion of the court.

Upon the case presented, it is necessary to consider a single question only.

It was insisted, in argument, that the pardon pleaded by the appellant cannot avail to relieve him from the forfeiture of the property seized, because the liability to seizure arose, under the statute, from the mode in which the property was employed, and was not to be regarded as a penal consequence of the act of the owner.

We are unable to concur in this view. We think it clear that the statute regarded the consent of the owner to the employment of his property in aid of the rebellion as an offence, and inflicted forfeiture as a penalty. The general pardon of Armstrong, therefore, relieved him of so much of the penalty as accrued to the United States. We think it unnecessary to express any opinion at present in relation to the rights of the informer.

The proceedings below related to a seizure of land, and though conducted under the statute in the forms of admiralty, must be regarded as a case of common law jurisdiction, a final decision in which can be reviewed here only on writ of error

The decree of the Circuit Court, therefore, must be RE-VERSED as irregular, and the cause REMANDED, with directions to allow a new trial, the proceedings in which shall be conformed, in respect to trial by jury and exceptions to evidence, to the course of the common law.

Mr. Justice MILLER dissented.

---

* 1 Kent's Commentaries, 376; La Vengeance, 3 Dallas, 297; United States *v* Sally, 2 Cranch, 406; United States *v.* Betsy, 4 Id. 443; The Samuel, 1 Wheaton 9; The Octavia, Id. 20; The Sarah, 8 Id. 391.

### NOTE.

At the same time with the two preceding cases was decided, on appeal from the same circuit (*Mr. Durant, for the appellant*), the case of St. Louis Street Foundry; not distinguishable,—as the Chief Justice stated was the opinion of the court,—in principle from them.

It appeared in it that Cronan, in the Circuit Court, pleaded the amnesty proclaimed by President Lincoln on the 8th of December, 1863, and the oath taken by himself in pursuance of the proclamation; but there was no averment in this plea that Cronan was not within any of certain exceptions made by that proclamation.*

The CHIEF JUSTICE delivered the opinion.

The plea was properly overruled.

Upon proper pleading and proof, however, the claimant of property seized under the act of August 6th, 1861, is entitled to the benefit of amnesty to the same extent as, under like pleading and proof, he would be entitled to the benefit of pardon.

The decree of the Circuit Court must be REVERSED as irregular, and the cause remanded, with directions to allow a new trial, the proceedings in which shall be conformed, in respect to trial by jury and exceptions to evidence, to the course of the common law.

---

* See the Gray Jacket, 5 Wallace, 368.