[L. A. No. 21780. In Bank. May 25, 1951.]

THE PEOPLE, Respondent, v. ONE 1941 CHEVROLET COUPE, ENGINE NO. AA430562 et al., Defendants; FRED W. GRAY COMPANY (a Corporation), Appellant.

284

Macfarlane, Schaefer & Haun, William Gamble and E. J. Caldecott for Appellant.

Sheppard, Mullin, Richter & Balthis, George R. Richter, Jr., and Roy Littlejohn, as Amici Curiae on behalf of Appellant.

Fred N. Howser, and Edmund G. Brown, Attorneys General, and Dan Kaufmann, Deputy Attorney General, for Respondent.

THE COURT.—This appeal is from a judgment ordering forfeiture of an automobile to the state. After decision by the District Court of Appeal, Second Appellate District, Division Three, a hearing was granted by this court in order to give further consideration to the important question of law involved. We have concluded that the opinion of the District Court of Appeal, prepared by Mr. Justice Vallée, correctly discusses and decides this question. That opinion, with deletions and additions that have been made for the purpose of discussing certain contentions urged upon us by the attorney general, is adopted as the opinion of this court. As modified, the opinion is as follows:

"The State instituted this proceeding by filing a 'Notice of Seizure and Intended Forfeiture Proceedings' as provided by sections 11612 and 11613 of the Health and Safety Code. The notice alleged that the automobile had been seized pursuant to section 11611 of that code and that it 'was used to unlawfully conceal, convey, carry or transport marihuana, and marihuana was unlawfully in the possession of an occupant.' The registered owner and the legal owner answered separately, denying the allegations of the notice. The legal owner alleged that, prior to the seizure, it loaned $886.52 to the registered owner and received a chattel mortgage which was duly filed for record and is a first lien on the automobile. It also alleged that, prior to making the loan, it made a 'reasonable investigation of the moral responsibility, character and reputation of the [registered owner] . . . and found the same to be good,' and that there was a balance due of $865.57, with interest.

"The court found that the automobile was used contrary to the provisions of section 11610 of the Health and Safety Code and that the legal owner did not, prior to the loan, make a reasonable investigation of the moral responsibility, character and reputation of the registered owner. The legal owner appeals from the judgment.

"Prior to the setting of the cause for trial, appellant filed a demand for trial by jury. Thereafter respondent filed objections to the demand and a notice of motion to set the cause for trial without a jury. The respondent's motion was granted. When the cause came on for trial appellant renewed its de-

mand and moved the trial judge for a trial by jury. The motion was denied.

"Appellant contends it was denied its right to a trial by jury in violation of article I, section 7, of the Constitution of California.

"Health and Safety Code, section 11610, provides that a vehicle used to unlawfully transport any narcotic, or in which any narcotic is unlawfully kept, deposited or concealed, or is unlawfully possessed by an occupant thereof, shall be forfeited to the State. At the time of the seizure in 1948, section 11611 (amended, Stats. 1949, ch. 1475, § 22) provided that any peace officer upon making, or attempting to make, any arrest for violation of the narcotics provisions of the code, shall seize any vehicle so used unlawfully and hold it 'as evidence until a forfeiture has been declared or a release ordered.' Provision is made for notice to owners, answers, notice of hearing, hearing, and for judgment of forfeiture or release. (Health & Saf. Code, §§ 11612-11622, both inc.)

█ "There can be no forfeiture of property without notice to the owner and a hearing at which he can be heard, except in a few cases of necessity, i. e., property kept in violation of law which is incapable of lawful use. Where the property is what is sometimes termed innocent property, threatening no danger to the public welfare, the owner must be afforded a fair opportunity to be heard. This is true whether it be a common-law or judicial forfeiture (one which does not take effect until by a judgment the rights of the State have been established in a suit instituted for that purpose), or a statutory or legislative forfeiture (one where the forfeiture is effective on the commission of the offense). In either case the law requires proceedings to be instituted for the purpose of ascertaining the facts of the forfeiture. (*People* v. *Broad,* 216 Cal. 1, 3-7 [12 P.2d 941].) █ A statutory or legislative forfeiture is *in rem* against the property itself. A common-law or judicial forfeiture is *in personam* against a defendant (37 C.J.S. 5, § 2). The forfeiture prescribed by the Health and Safety Code is *in rem.* (*People* v. *Broad,* 216 Cal. 1 [12 P.2d 941]; 37 C.J.S. 5, § 2.) The effect of such a forfeiture is to transfer the title to the vehicle from the owner to the State.

█ " 'The right of trial by jury shall be secured to all, and remain inviolate.' (Cal. Const., art. I, § 7; Cal. Const. of 1849, art. I, § 3.) The right to trial by jury guaranteed by the Constitution is the right as it existed at common law

at the time the Constitution was adopted. *(People v. Richardson,* 138 Cal.App. 404, 408 [32 P.2d 433].) The common law at the time the Constitution was adopted includes not only the *lex non scripta* but also the written statutes enacted by Parliament. *(Moore v. Purse Seine Net,* 18 Cal.2d 835, 838 [118 P.2d 1].) The common law respecting trial by jury as it existed in 1850 is the rule of decision in this state. *(Farrell v. City of Ontario,* 39 Cal.App. 351, 356 [178 P. 740].) Any act of the Legislature attempting to abridge the constitutional right is void. *(People v. Kelly,* 203 Cal. 128, 133 [263 P. 226] ; *People v. Bruneman,* 4 Cal.App.2d 75, 79 [40 P.2d 891] ; *Cassel v. Gregori,* 28 Cal.App.2d Supp. 769, 774 [70 P.2d 721].)[1] It is the right to trial by jury as it existed at common law which is preserved; and what that right is, is a purely historical question, a fact which is to be ascertained like any other social, political or legal fact. The right is the historical right enjoyed at the time it was guaranteed by the Constitution. It is necessary, therefore, to ascertain what was the rule of the English common law upon this subject in 1850.

"Long before the adoption of the California Constitution there were numerous statutes in England providing for the seizure and forfeiture of property used in violation of law.[2]

---

"[1]The right has always been regarded as sacred and has been jealously guarded by the courts. *(People v. Peete,* 54 Cal.App. 333, 363 [202 P. 51].) 'Trial by juries is the *Englishman's* birth-right, and is that happy way of trial, which, notwithstanding all revolutions of time, hath been continued beyond all memory to the present day; the beginning whereof no history specifies, it being contemporary with the foundation of this state, and one of the pillars of it, both as to age and consequence.'' (Burns, Justice of the Peace (23d ed.), vol. III, p. 80.) See also *Parsons v. Bedford,* 3 Pet. (U.S.) 433 [7 L.Ed. 732, 736].

"[2][1381] 5 Rich. II, stat. 1, ch. 2, act respecting transfer of gold and silver; [1400] 2 Hen. IV, ch. 5, act to prevent gold and silver from being carried out of realm; [1604] 1 James I, ch. 2, § 43, act re tanners, curriers, shoemakers, etc.; [1660] 12 Chas. II, ch. 4, § 5, act providing duties; [1660] 12 Chas. II, ch. 18, § 2, act to encourage shipping— Navigation Act; [1662] 13 & 14 Chas. II, ch. 11, §§ 14, 17, 22, 23, 26, 31, act for preventing frauds; [1662] 14 Chas. II, cap. 7, act to restrain exportation of leather and raw hides; [1663] 14 Chas. II, ch. 11, § 1, act to prevent frauds of brewers and other persons; [1663] 15 Chas. II, ch. 7, §§ 6, 8, act to encourage trade; [1688] 1 W. & M. ch. 32, § 2, act to prevent exportation of wool; [1692] 4 & 5 W. & M. cap. 5, § 8, act to prevent frauds in importation of spirits; [1700] 11 & 12 Will. III, ch. 10, § 2, act to encourage manufacturers and affecting importations; [1709] 8 Anne, ch. 7, § 17, act relating to imports; [1718] 5 Geo. I, ch. 11, §§ 1, 2, 3, 4, 6, 8, 15, 21, act relating to smuggling; [1721] 8 Geo. I, ch. 18, act to prevent clandestine running of goods and infection thereby; [1724] 11 Geo. I, ch. 30, § 16, act to prevent frauds and abuses in public revenues; [1725] 12 Geo. I, ch. 28 §§ 13, 14, act

"At common law the trial of actions for forfeiture to the Crown of property used in violation of law was in the Court of Exchequer. 'The term "Common Law" often refers to those principles of English Law which were evolved in the Common Law Courts, as opposed to the principles which were applied in the Courts of Chancery and Admiralty and the Ecclesiastical Courts. The Courts of Common Law before the passing of the Judicature Acts, 1873-5, were the three Royal Courts of King's Bench, Common Pleas or Common Bench, and Exchequer, which had emerged from the King's Council (*Curia Regis*) as separate Courts by the end of the thirteenth century.' (Phillips, The Principles of English Law and the Constitution, 70.)[3] The Court of Exchequer was not a criminal court; and all suits for penalties, though for the King, were considered as civil. (Burns, Justice of the Peace (23d ed.) vol. I, p. 806.) By the end of the thirteenth century there was a recognized distinction between the Exchequer of Account and Receipt, and the Court of Exchequer or 'Exchequer of Pleas.' (Radcliffe & Cross, The English Legal System, p. 54.) The proceedings of the Court of Exchequer were originally confined to bills by the Attorney General to recover money or property for the Crown. (*Idem.* 160.) It was origi-

---

for improvement of his Majesty's revenues; [1728] 1 Geo. II, ch. 17, § 7, act prohibiting certain imports; [1736] 9 Geo. II, ch. 35, §§ 22, 23, act relating to revenues; [1746] 19 Geo. II, ch. 12, §§ 3, 17, 19, 20, 21, act relating to duties on glass, etc.; [1763] 3 Geo. III, ch. 22, §§ 5, 6, 8, act relating to seizures; [1765] 5 Geo. III, ch. 43, § 27, act relating to revenues; [1765] 6 Geo. III, ch. 19, § 1, act relating to imports; [1781] 21 Geo. III, ch. 37, §§ 1, 2, act to prevent exportation to foreign parts of certain goods; [1781] 21 Geo. III, ch. 55, §§ 13, 20, 21, 24, 29, 30, act relating to duties and preventing frauds; [1784] 24 Geo. III, ch. 19, reenactment of 1 James I, ch. 22, § 43; [1784] 24 Geo. III, ch. 47, § 4, act to prevent smuggling; [1786] 26 Geo. III, ch. 77, § 10, act relating to duties; [1787] 27 Geo. III, ch. 32, §§ 1, 2, 3, 5, 7, act relating to smuggling; [1793] 33 Geo. III, ch. 2, § 4, act relating to exportation of arms and ammunition; [1794] 34 Geo. III, ch. 50, §§ 2, 8, 9, act relating to imports; [1797] 38 Geo. III, ch. 89, § 8, act relating to duties; [1798] 39 Geo. III, ch. 59, §§ 5, 14, act relating to imports; [1802] 42 Geo. III, ch. 38, § 20, act relating to duties and to prevent frauds; [1805] 45 Geo. III, ch. 121, § 6, act to prevent smuggling; [1807] 47 Geo. III, ch. 66, §§ 3, 8, 9, 10, 13, 14, act to prevent smuggling; [1825] 6 Geo. IV, ch. 107, §§ 64, 71, 128, act regulating customs; [1825] 6 Geo. IV, ch. 108, §§ 2, 45, act to prevent smuggling; [1833] 3 & 4 Wm. IV, ch. 52, §§ 10, 14, 20, 24, 28, 61, 118, act regulating customs; [1833] 3 & 4 Wm. IV, ch. 53, §§ 2, 3, 6, 14, 28, 31, 47, act to prevent smuggling; [1842] 5 & 6 Vict. ch. 47, §§ 10, 11, 18, 36, 42, act relating to customs; [1842] 5 & 6 Vict. ch. 93, §§ 8, 10, act regulating excise on tobacco.

"[3]For the distinction between Queen's Bench, Common Pleas and Exchequer, see *The Attorney-General v. Hallett*, 15 M. & W. 97, 153 Eng. Rep. 777, 781."

nally, and continued to be, a common-law court. (*Idem.* 166; Plucknett, a Concise History of the Common Law, 4th ed., 152.) The Court of Exchequer was absorbed by the Supreme Court of Judicature in 1875. (*Idem.* 201.)

"Blackstone says: 'An *information* on behalf of the crown, filed in the exchequer by the king's attorney general, is a method of suit for recovering money or other chattels, . . . It is grounded on no writ under seal, but merely on the intimation of the king's officer the attorney-general, who "gives the court to understand and be informed of" the matter in question: upon which the party is put to answer, and trial is had, as in suits between subject and subject. The most usual informations are those . . . for any forfeiture due to the crown upon the breach of a penal statute.' (3 Bl.Com. (12th ed.) 261.)[4]

"In *Moore* v. *Purse Seine Net*, 18 Cal.2d 835 [118 P.2d 1] (cert. granted 316 U.S. 643 [62 S.Ct. 1036, 86 L.Ed. 1728]), it was held that: a proceeding for forfeiture of a fish net used in violation of law is a type of action that was cognizable in a common-law court; 'an action *in rem* can be brought by the state in an ordinary common law court for the forfeiture of goods or articles used in violation of laws imposing such a penalty' (p. 839); '[s]uch forfeiture to the state of illegally used articles has continued as an accepted common law procedure' (p. 840); and 'the forfeiture of illegally used nets authorized by the California statute involves a traditional common law remedy cognizable in the state courts, even though the statute was enacted long subsequent to the Judiciary Act.' (P. 842.)

". . . [T]he conclusions of our Supreme Court in the Moore case were followed by the Supreme Court of the United States in the decision of the case, *C. J. Hendry Co.* v. *Moore*, 318 U.S. 133 [63 S.Ct. 499, 87 L.Ed. 663]. In what Dean Dickinson[5] has described as 'at once a monumental piece of erudition and a notable contribution to the meaning of the much mooted phrase "common law remedy," '[6] Mr. Chief Justice Stone,

---

[4]See also Cox, Institutions of the English Government, 517. An information filed in the Court of Exchequer was the first judicial proceeding *in rem* towards the legal condemnation of goods seized as forfeited. *The Attorney-General* v. *Jefferys*, 13 Price, 545, Eng. Rep. 1077, 1078.

[5]Former Dean School of Jurisprudence, University of California, now Professor of Law, University of Pennsylvania.

[6]36 Cal.L.Rev. 173.

writing for the court, said (87 L.Ed. 666) : 'Forfeiture to the Crown of the offending object, because it had been used in violation of law, by a procedure in rem was a practice familiar not only to the English admiralty courts but to the Court of Exchequer. The Exchequer gave such a remedy for the forfeiture of articles seized on land for the violation of law. And, concurrently with the admiralty, it entertained true proceedings in rem for the forfeiture of vessels for violations on navigable waters. Such suits in the Exchequer were begun on information and were against the vessel or article to be condemned. Under the provisions of many statutes the suit might be brought by an informer qui tam, who was permitted to share in the proceeds of the forfeited article ; the judgment was of forfeiture and the forfeited article was ordered to be sold. This was the established procedure certainly as early as the latter part of the seventeenth century. . . .

" 'Separate courts exercising the jurisdiction of the Court of Exchequer were never established in the American Colonies. Instead, that jurisdiction was absorbed by the common law courts which entertained suits for the forfeiture of property under English or local statutes authorizing its condemnation. Long before the adoption of the Constitution the common law courts in the Colonies—and later in the states during the period of Confederation—were exercising jurisdiction in rem in the enforcement of forfeiture statutes. Like the Exchequer, in cases of seizure on navigable waters they exercised a jurisdiction concurrently with the courts of admiralty. . . . By that time [about 1700], the jurisdiction of common law courts to condemn ships and cargoes for violation of the Navigation Acts had been firmly established, apparently without question, and was regularly exercised throughout the Colonies. In general the suits were brought against the vessel or article to be condemned, *were tried by jury,* closely followed the procedure in Exchequer, and if successful resulted in judgments of forfeiture or condemnation with a provision for sale. [Italics added.]

" 'The rise of the vice-admiralty courts—prompted in part by the Crown's desire to have access to a forum not controlled by the obstinate resistance of American juries—did not divest the colonial common law courts of their jurisdiction to proceed in rem in cases of forfeiture and condemnation. . . .[p. 674.]

" 'It is noteworthy that Blackstone's Commentaries, more read in America before the Revolution than any other law book, referred to the information in rem in the Court of

Exchequer as the procedure by which forfeitures were inflicted for violation of Acts of Parliament. Bk. 3, p. 262. And Kent, in his Commentaries, pointed out that "seizures, in England, for violation of the laws of revenue, trade or navigation, *were tried by a jury in the Court of Exchequer, according to the course of the common law;* and though a proceeding be in rem, it is not necessarily a proceeding or cause in the admiralty" (12th ed. Vol. 1, p. 374). He declared that, within the meaning of § 9 of the Judiciary Act, the common law was competent to give such a remedy "because, under the vigorous system of the English law, such prosecutions in rem are in the Exchequer, according to the course of the common law." [Italics added.] . . . [p. 675]

" '. . . In all this we perceive a common understanding of judges, lawyers and text writers, both before and after the adoption of the Constitution, of the common law nature of the procedure and judgment in rem in forfeiture cases and of its use in such proceedings in the Exchequer and in the American common law courts.

" 'We conclude that the common law as received in this country at the time of the adoption of the Constitution gave a remedy in rem in cases of forfeiture, and that it is a "common law remedy". . .'

"There is evidence that at a very early date (1236 and 1299) in the history of the Court of Exchequer the trial of common law actions was by jury.[7] Apparently during that period the jury consisted of twelve witnesses gathered from the neighborhood to decide disputed questions of fact upon their previous knowledge.[8]

"As early as 1301, a case involving forfeiture of a ship and goods for piracy was tried by a jury.[9] In 1457 on an information in the Exchequer for the King's goods which were stolen, the Exchequer Chamber said, 'the jurors are the judges of the fact.'[10] In 1662 a statute was enacted providing for a

" '[7]Jenkinson, Select Cases in the Exchequer of Pleas, p. 1; idem. p. lxxxii.

" '[8]Jenkinson, Select Cases in the Exchequer of Pleas, p. cxvi, p. 20 (58), p. 37 (88), p. 40 (94, 95), p. 56 (116), p. 66 (128), p. 88 (146), p. 103 (162), p. 116 (171), p. 121 (174), p. 131 (181), p. 133 (183), p. 140 (189), p. 146 (193), p. 150 (198), p. 168 (215), p. 172, (219A), p. 174 (221), p. 180 (227B), p. 183 (228), p. 196 (243), p. 198 (245), p. 200 (246), p. 206 (251)); Case LXII (1457) Jenk. 83, 145 Eng. Rep. 59.

" '[9]Jenkinson, Select Cases in the Exchequer of Pleas, p. 168 (215).

" '[10]Case LXII [1457] Jenk. 83, 145 Eng. Rep. 59.

jury of 'natural and free born subjects of the King' in actions, suits and informations commenced for the forfeiture of ships or goods used in unlawful importation or exportation.[11]. . .

"A case decided in 1766, *Mitchell*, who prosecutes for the King and Himself, v. *Torup*,—Exchequer—Parker, 227, 145 Eng.Rep. 764, was an information of seizure. It alleged that the plaintiff seized a ship and goods therein for unlawfully bringing the goods into Britain. The prayer was that the ship and goods remain forfeited. Issue was joined. The cause was tried by a jury. In the course of the opinion the court said: 'it is objected, that the penalty or forfeiture, imposed by the fourth clause of the act, is only applicable to cases where there is some crime or guilt; but no crime or guilt can be imputed to the master, mate or owners, without their privity, the mariners being the only criminal or guilty persons, and therefore they ought to be the only sufferers. To which I answer, that though penalty or forfeiture, generally speaking, is the consequences of some crime or guilt, yet neither penalty nor forfeiture necessarily imply the one or the other, though punishment always does. To show this, several instances were mentioned upon the arguments: as where a murder is committed with the sword of an innocent man, the sword is forfeited; the like of all deodands. So, by the 4th of William and Mary, c. 8, the horses of innocent owners, upon which robberies are committed, are forfeited. And by the 8th of Anne, c. 7, s. 17, the vessels, boats, horses and other cattle, and carriages, made use of in the landing or removing, carriage or conveyance of any uncustomed or prohibited goods, are forfeited. And there are several other acts to the same purpose, which I shall barely refer to 13 & 14 Car. 2, c. 11, s. 7. 1 W. & M. c. 32, s. 2. 7 & 8 W. 3, c. 28, s. 8. 8 Ann. c. 13, s. 16. 10 Geo. 1, c. 10, s. 27. 12 Geo. 2, c. 24, s. 11. 24 Geo. 2, c. 41, s. 22. But by the 4th clause of the Navigation Act, the forfeiture is not upon the person, but upon the ship; nor is this a proceeding in personam, but in rem, for the condemnation of the ship as forfeited. And I am credibly informed, that the informations upon this clause of the act have been in this form from the time of passing it, which shewes how this law has been understood; and as no privity has been laid in them, it was not necessary to prove more than was laid. And though

---

[11] [1662] 13 & 14 Chas. II, ch. 11, § 21. See *Roe* v. *Roe* [1673]—Exchequer—Hardres, 185, 145 Eng. Rep. 443, where it was held that the issue of fact for the jury in an information for selling and importing to be sold foreign woollen contrary to statute was whether such cloth was imported to be sold.

I agree that the jury are not concluded from finding the truth of the fact where it is within the issue; yet here the jury have found the issue for the plaintiff: and their finding the importation to be without the privity of the master, mate or owners, is nugatory and void, because it is not comprized in the issue. Bro. Verdict, pl. 78, 2 Ro. Abr. 707, pl. 37. Hob. 53, Lord Raym. 860, 865, *Tonkin* and *Crocker*. Mr. Attorney insisted, that the ship, in this case was to be considered as the offender; and this is countenanced by the words in the latter part of the first clause; ''all such ships or vessels as shall have offended contrary hereunto.'' '

''Many of the English statutes provided for forfeiture of the conveyance used in carrying articles in violation of law, together with all goods therein.[13]

''There are reports of many cases in the Court of Exchequer in which articles used in violation of law were forfeited to the Crown pursuant to statute, in all of which the cause was tried by a jury.[14]

''[13]If certain goods were unlawfully imported the goods were forfeited 'together with the vessels and boats, and all the horses, and other cattle and carriages whatsoever, made use of in the landing, removing, carriage, or conveyance of any of the aforesaid goods.' (8 Anne, c. 7, s. 17 [1709].) If glass was unlawfully imported into Great Britain from Ireland in addition to the forfeiture of glass the vessel in which it was imported was also forfeited with her tackle, apparel, and furniture. (9 Geo. II, c. 12, s. 19, 20, 21 [1746]; see also 33 Geo. III, c. 2, s. 4 [1793]; 39 Geo. III, c. 59, s. 14 [1798].) On the forfeiture of tea removed from the kingdom 'the same, together with the canisters, bags and other package whatsoever, containing the same and the vessels and boats, and the horses, and other cattle and carriages employed in removing the same, shall be forfeited, and shall and may be seized by any officer or officers of excise.' (21 Geo. III, c. 55, s. 20 [1781].) On a forfeiture of salt for failure to declare or pay duties the salt was forfeited 'together with the packages containing the same, and the ships, boats and vessels, and all the horses, and other cattle and carriage whatsoever made use of in the removing, landing, carriage, or conveyance of such salt, and the same respectively shall and may be seized by any officer or officers of the customs or excise.' (38 Geo. III, c. 89, s. 8 [1797].) The statute of 3 & 4 Wm. IV, c. 53, s. 28 [1833] provided that if any goods liable for duties shall be unshipped 'all such goods as aforesaid shall be forfeited together with all Horses and other animals, and all carriages and other things, made use of in the Removal of such Goods.' The statute 5 & 6 Vict. c. 93, s. 8 [1842] provided that no person cut, colour or manufacture, or have in his possession, any leaves or other matters to imitate or to be mixed with tobacco or snuff subject to forfeiture of 200 lbs., and that the leaves and other matters, 'together with all Machines, Tools, Materials, Vessels, and Utensils for cutting, grinding, pounding, colouring, staining, dyeing, manufacturing or preparing the same shall be forfeited.'

''[14]*Anonymous Case* LXX [1459], Jenk. 87, 145 Eng. Rep. 62, was for the forfeiture to the King of merchandise alleged to have been shipped with intent to transport it to an unlawful place. The manner

of obtaining a jury is discussed. *Anonymous Case* XCVI [1506], Jenk. 191, 145 Eng. Rep. 128, was an information in behalf of the King for transporting 'cloath,' custom not being paid. The 'cloath' was forfeited to the King. An information against *Page* [1607], Lane, 19, 145 Eng. Rep. 264, was for buying butter, and selling it at retail contrary to the statute. *Rook's Case* [1655], Hardres, 20, 145 Eng. Rep. 359, was an information for importing 'pottacoes' of tobacco of foreign growth in a foreign vessel. The case was tried by a jury resulting in forfeiture of the tobacco which was later set aside because of defects in the information. *Jones* v. *Clark* [1655], Hardres, 46, 145 Eng. Rep. 373, was 'Upon an information for not garbling [culling] two and twenty bags of spice according to the statute of 21 Jacob, whereby it became forfeited.' In *Holton* v. *Raworth* [1775 or 1776], Hardres, 358, 145 Eng. Rep. 496, a trial by jury was had on an information upon seizure of wines for not paying custom. In *Rex* v. *Southerby* [1716], Bunbury, 4, 145 Eng. Rep. 575, Southerby was outlawed and a writ of execution issued. A trial by jury was then had and 'his house and goods seized by virtue thereof.' *Bill* v. *Robinson* [1719], Bunbury, 48, 145 Eng. Rep. 591, was a suit against an informer after a verdict for the defendant on the trial of an information upon seizure. *Bradley qui tam* v. *Long* [1721], Bunbury, 78, 145 Eng. Rep. 601, was an information for importing brandy in a collier. Verdict was for the King. *Rickson qui tam* v. *Sandford* [1724], Bunbury 192, 145 Eng. Rep. 644, forfeiture of seized wines; *Idle qui tam* v. *Vanheck* [1727], Bunbury, 231, 145 Eng. Rep. 657, forfeiture of ships for unlawful importation of goods; *Attorney General* v. *Jackson* [1727], Bunbury, 234, 145 Eng. Rep. 658, seizure and forfeiture of ships and goods. *Robinson qui tam* v. *Lequesne* [1728], Bunbury, 251, 145 Eng. Rep. 664, was upon 'an information of seizure of Jesuits bark . . . for fraudulent exportation of Jesuits bark, two casks out of six being dust.' *Scott*, who prosecutes for His Majesty and Himself, v. *A'Chez*, [1743], Parker, 20, 145 Eng. Rep. 702, was an information grounded on the statute of 12 Car. 2 c. 18, the Navigation Act. It alleged that plaintiff seized a ship and goods therein because the goods were imported unlawfully. The prayer was 'that the ship and goods may remain forfeited.' Issue was joined. The penalty provided by the act was forfeiture of the ship and cargo. *Attorney-General* v. *Munn* [1748], Parker 91, 145 Eng. Rep. 723, was an information 'on a seizure of several parcels of tobacco stalks as forfeited, by being imported contrary to the act 12 Geo. I, c. 28, s. 13.' *Malden* v. *Bartlett* [1750], Parker, 105, 145 Eng. Rep. 727, was an information by the plaintiff suing for the King and himself. It was alleged that the plaintiff had seized a parcel of tobacco imported unlawfully. The statute provided that the tobacco be forfeited to the King and burned. Bartlett came in and claimed the property. The issues were tried by a jury. *The Attorney General* v. *Parke* [1793], 1 Anst. 240, 145 Eng. Rep. 860, was an information for forfeiture for violation of a statute relative to the making of glass. *The Attorney General* v. *Brown* [1796], 3 Anst. 720, 145 Eng. Rep. 1018, was an information for forfeiture of a cutter alleged to have been found out of the limits of her license in violation of law. On the same facts *The Attorney General* v. *Roote* [1796], 3 Anst. 726, 145 Eng. Rep. 1020. *The Attorney General* v. *Sheriff* [1801], Forrest, 41, 145 Eng. Rep. 1107, was an information for the forfeiture of a ship and cargo for unlawfully importing wines. *The Attorney General* v. *Forge* [1801], Forrest, 104, 145 Eng. Rep. 1127, was an information for the forfeiture of treble the value of candles possessed unlawfully. The statute also provided for forfeiture of the candles. *The Attorney-General* v. *Wilson* [1817], 3 Price, 431, 146 Eng. Rep. 311, was an information for condemnation of a ship and her cargo on the ground of illicit importation of flaxseed, etc. *The Attorney-General* v. *Theakstone* [1820], 8 Price,

"Cases involving penalties to the Crown, other than forfeiture of conveyances and goods, were also tried by a jury in the Court of Exchequer.[15]

89, 146 Eng. Rep. 1140, was an information for condemnation of a vessel after seizure for having prohibited gunpowder on board. *The Attorney-General* v. *Jefferys* [1824], 13 Price, 545, 147 Eng. Rep. 1077, was an information (of seizure in rem) for the condemnation of machines unlawfully packed for export. The statute (21 Geo. III, ch. 37, § 2) provided for forfeiture. The prayer was that the goods 'might remain forfeited.' *The Attorney-General* v. *Vondiere* [1834], 1 C. M. & R., 570, 149 Eng. Rep. 1207, was an information for the condemnation of 'silk waistcoats.' The goods had been illegally removed from a warehouse. The statute (3 & 4 Will. IV, ch. 52, sec. 28) provided that the goods 'together with all horses and other animals, and all carriages and other things made use of in the removal of such goods' be forfeited. *Attorney-General* v. *Schiers* [1835], 2 C. M. & R. 286, 150 Eng. Rep. 124, was an information praying the forfeiture of a foreign vessel, seized by officers of the customs, for being found on the high seas within one league of the coast of the United Kingdom with contraband spirits aboard. The statute (3 & 4 Will. IV, ch. 53, § 2) provided for forfeiture of the vessel and goods. *Attorney-General* v. *Catt* [1837], 3 M. & W. 7, 150 Eng. Rep. 1033, was an information for being concerned in unshipping goods liable to duties; for concealing goods illegally shipped; and for 'harbouring' goods illegally imported. *Attorney-General* v. *Le Revert* [1840], 6 M. & W. 405, 151 Eng. Rep. 469, on like facts was tried by a jury and the vessel and goods forfeited. *The Attorney-General* v. *Rogers* [1843], 11 M. & W. 670, 152 Eng. Rep. 974, was 'an information filed against the defendant, a tobacconist, for penalties for mixing saccharine matter with tobacco in the course of manufacture, and for having in his possession saccharine matter for the purpose of using it in the manufacture of tobacco.' The statute provided for forfeiture of the tobacco (5 & 6 Vict. c. 93.) *The Attorney-General* v. *Clerc* [1844], 12 M. & W. 640, 152 Eng. Rep. 1355, was an information for the condemnation of foreign wines after seizure. The statute (5 & 6 Vict. ch. 47, § 18) provided for forfeiture. See also *Anonymous Case* XCIV, Jenk. 229, 145 Eng. Rep. 159; *The Attorney General* v. *Woodmass* [1727], Bunbury, 246, 145 Eng. Rep. 662; *The Attorney-General* v. *Norstedt* [1816], 3 Price, 97, 146 Eng. Rep. 203; *The Attorney General* v. *Stevens* [1816], 3 Price, 72, 146 Eng. Rep. 195; *The Attorney General* v. *King* [1817], 5 Price, 195, 146 Eng. Rep. 579; *The Attorney General* v. *Delano* [1819], 6 Price, 383, 146 Eng. Rep. 841; *The Attorney General* v. *Kent* [1819], 7 Price, 533, 146 Eng. Rep. 1052; *The Attorney-General* v. *French* [1819], 7 Price, 557, 146 Eng. Rep. 1060; *The Attorney-General* v. *Goodman* [1820], 8 Price, 220, 146 Eng. Rep. 1184; *The Attorney-General* v. *Hall* [1823], 11 Price, 760, 147 Eng. Rep. 629; *Attorney-General* v. *Greaves* [1835], 2 C. M. & R. 669, 150 Eng. Rep. 284. As stated, all of these cases were tried by a jury.

"[15]*Isabell Fortescues Case* [1611], Lane, 91, 145 Eng. Rep. 324, was that a penalty be imposed upon her for recusancy (absence from church). An inquisition issued and the case was tried by a jury. In *The Protector* v. *Sir Thomas Ashfield* [1656], Hardres, 62, 145 Eng. Rep. 381, two parts of Ashfield's land were seized for recusancy. He pleaded conformity. The court held that before the lands could be forfeited to the King conformity must be tried by the common law. *Stevens* v. *Duckworth* [1775 or 1776], Hardres, 338, 145 Eng. Rep. 486, was an information 'tam quam' for forfeiture of five pounds a

"The determination of a question of fact by means of a jury, and public and oral procedure, was common to all the courts of law. (Fischel, The English Constitution, 237, 238, 263.) '. . . each form of action was started by a different writ and had its own peculiarities, but there was one characteristic possessed by nearly all of them, the submission of issues of fact to a jury. It is true that the common law knew of other methods of trial; appeals of felony and writs of right might result in trial by battle, and the defendant in an action of debt or detinue could resort to "compurgation"; but, broadly speaking, one may say that actions in the common law courts were tried by jury.' (Radcliffe & Cross, The English Legal System, p. 83.) Blackstone says: 'For it is a part of the liberties of England, and greatly for the safety of the subject, that the king may not enter upon or

---

day for selling wines without a license. *The Attorney General* v. *Brewster* [1795], 2 Anst. 559, 145 Eng. Rep. 966, was an information for a penalty of 500 1. for concealing soap in violation of 1 Geo. I, st. 2, c. 31. *The Attorney General* v. *Brown* [1801], Forrest, 110, 145 Eng. Rep. 1129, was an information for penalties, for assisting in unshipping spiritous liquors and tobacco before the duties were paid. *The Attorney General* v. *Saggers* [1814], 1 Price, 182, 145 Eng. Rep. 1370, was for treble the value of goods unlawfully imported. *The Attorney General* v. *Farr* [1817], 4 Price, 122, 146 Eng. Rep. 414, was for assisting in unshipping prohibited and unaccustomed goods. The prayer was for treble the value of the goods. *The Attorney General* v. *Horton* [1817], 4 Price, 237, 146 Eng. Rep. 451, was an information for smuggling salt which had been seized. *The Attorney-General* v. *Key* [1830], 1 C. & J. 159, 148 Eng. Rep. 1375. An information for penalties (treble value) for 'harbouring' and concealing smuggled goods. See also *The Attorney General* v. *Courtice* [1821], 9 Price, 450, 147 Eng. Rep. 147; *The Attorney General* v. *Vew Llette* [1822], 10 Price, 9, 147 Eng. Rep. 225; *The Attorney-General* v. *Freer* [1822], 11 Price, 183, 147 Eng. Rep. 441; *The Attorney-General* v. *Bevington* [1822], 11 Price, 222, 147 Eng. Rep. 454; *The Attorney General* v. *Tongue* [1823], 12 Price, 51, 147 Eng. Rep. 653; *The Attorney General* v. *Woolhouse* [1823], 12 Price, 65, 147 Eng. Rep. 657; *The Attorney-General* v. *Hatton* [1824], M'Cle. 214, 148 Eng. Rep. 91; *The Attorney-General* v. *Good*, [1825], M'Cle. & Yo. 286, 148 Eng. Rep. 421; *The Attorney-General* v. *Barrell* [1827], 1 Y. & L. 495, 148 Eng. Rep 766; *The Attorney-General* v. *Key* [1830], 1 C. & J. 159, 148 Eng. Rep. 1375; *The Attorney-General* v. *Siddon* [1830], 1 C. & J. 220, 148 Eng. Rep. 1400; *The Attorney General* v. *Slee* [1824], M'Cle. 567, 148 Eng. Rep. 237; *The Attorney-General* v. *Key* [1831], 2 C. & J. 2, 149 Eng. Rep. 1; *The Attorney-General* v. *Dyer* [1834], 2 C. & M. 664, 149 Eng. Rep. 927; *The Attorney General* v. *Tomsett* [1835], 2 C. M. & R. 170, 150 Eng. Rep. 73; *The Attorney-General* v. *Kenifeck* [1837], 2 M. & W. 715, 150 Eng. Rep. 944; *The Attorney General* v. *Hurel* [1843], 11 M. & W. 585, 152 Eng. Rep. 938; *The Attorney-General* v. *Lockwood* [1842], 9 M. & W. 378, 152 Eng. Rep. 160; *The Attorney-General* v. *Bailey* [1846], 16 M. & W. 74, 153 Eng. Rep. 1104. See also Hale's Pleas of the Crown, vol. I, pp. 493, 530; Gilbert, a Treatise on the Court of the Exchequer, 62-64.

seise any man's possessions upon bare surmises without the intervention of a jury.' (3 Bl. Com. 259.)[16]

"The common-law courts in the Colonies and in the states during the period of Confederation exercised jurisdiction *in rem* in the enforcement of forfeiture statutes. In general the actions were brought against the article to be condemned, were tried by jury, closely followed the procedure in the Court of Exchequer,[17] and, if successful, resulted in judgments of forfeiture or condemnation with a provision for sale.[18]

---

"'[16]'Actions *qui tam* are such as are given by acts of parliament, which impose a penalty, and create a forfeiture for the neglect of some duty, or commission of some crime, to be recovered by action or information, at the suit of him who prosecutes as well in the king's name as in his own.' (Bacon's Abridgement, 5th ed. col. 1, p. 61.) Bacon says that most penal statutes directed that the penalty might be recovered by action or information, and 'a new trial may be had after a *verdict* for the defendant. *Wilson* v. *Rastall*, 4 Term. Rep. 753,' (idem. italics added), and 'Such information may demand what is due to the informer, without mentioning what is due to the king; also, if the *quantum* depend *on what shall be found by the jury*, a blank may be left for the sum,' (idem. 63. Italics added) and 'Also where a statute limits suits by an informer qui tam to other courts, yet any one may, by construction of law, exhibit an information in the Exchequer for the whole penalty, for the use of the king,' (idem. 65) and 'If the jury find a general verdict with one penalty for the plaintiff, and he apply it to one count, he shall not be permitted afterwards to apply it to another count. . . .' (idem. 69.) 3 Bl. Com. 258, 259; Kent's Commentaries, 13th ed. vol. I, pp. 375-378.

"'[17]'The procedure under the common law in the Court of Exchequer for the forfeiture of property used in violation of law was similar to that prescribed by the Health and Safety Code. *Attorney General* v. *Lade* [1745], Parker, 57, 145 Eng. Rep. 712; *Malden* v. *Bartlett* [1750], Parker, 105, 145 Eng. Rep. 727; 13 & 14 Chas. II, c. 11, s. 28; 31 Eliz. c. 5, s. 5; 3 Geo. III, c. 22, s. 1, 6; 6 Geo. III, c. 19, s. 3, 4, 6, 10; 21 Geo. III, c. 37, s. 6, 7, 8, 9; 26 Geo. III, c. 77, s. 13; 45 Geo. III, c. 121, s. 13, 14.

"'[18]'Footnotes 4, 5, and 6 to the opinion in *C. J. Hendry Co.* v. *Moore*, 318 U.S. 133 [63 S.Ct. 499, 87 L.Ed. 663], contain references to many such cases. In Virginia by 1690 forfeiture cases under the Navigation Acts were tried at common law by a jury. In Maryland forfeiture cases were tried generally in courts of oyer and terminer acting with the jury. In Massachusetts forfeiture cases under the Navigation Acts were regularly tried by the Court of Assistants before juries, apparently in the same manner as other common-law cases. In New Jersey proceedings to condemn forfeited property were tried by a jury as early as 1685. In Pennsylvania forfeiture cases under the Navigation Acts were tried in the common-law courts by a jury. In New Hampshire forfeiture cases were tried in the court of common pleas with a jury as early as 1679. In Connecticut a cargo of a vessel was condemned by a jury in the county court in 1692. In Maine a vessel was cleared by a jury in 1680 (idem. footnote 4]. In New York before 1691 forfeiture cases

"In *C. J. Hendry Co.* v. *Moore, supra,* 318 U.S. 133 [63 S.Ct. 499, 87 L.Ed. 663, 675], it was said that the court 'has repeatedly declared that, in cases of forfeiture of articles seized on land for violation of federal statutes, the district courts proceed as courts of common law according to the course of the Exchequer on information in rem *with trial by jury.* The *Sarah,* 8 Wheat. (U.S.) 391, 396, 5 L.Ed. 644, 645; note A; *443 Cans of Frozen Egg Product* v. *United States,* 226 U.S. 172, 57 L.Ed. 174, 33 S.Ct. 50, and cases cited.' (Italics added.)[19]

"In exhaustive opinions the Court of Appeals of New York in *Colon* v. *Lisk* (1897), 153 N.Y. 188 [47 N.E. 302, 60 Am.St.Rep. 609],[20] the Supreme Court of Oklahoma in *Keeter* v. *State* (1921), 82 Okla. 89 [198 P. 866, 17 A.L.R. 557],[21] and the Supreme Court of Oregon in *State* v. *1920 Studebaker Touring Car* (1926), 120 Ore. 254 [251 P. 701, 50 A.L.R. 81],[22] held that before a claimant can be deprived of his property in proceedings of this kind he is entitled to a trial by jury as a matter of constitutional right.[23] . . .

■ "The right of trial by jury did not exist at common law in a suit to abate a public nuisance. (*People* v. *McCaddon,* 48 Cal.App. 790, 792 [192 P. 325].) Hence it is not a constitutional right now.

"Automobiles, carriages, wagons, horses, and mules, that are ordinarily used for lawful purposes, cannot be classified with narcotics, gambling paraphernalia, counterfeit coins, diseased cattle, obscene books and pictures, decayed fruit and fish, unwholesome meat, infected clothing, or other contra-

were tried in the General Quarter Sessions of the Peace with a jury; after 1691 in the Supreme Court of Judicature with a jury. (*C. J. Hendry Co.* v. *Moore,* 318 U.S. 133 [87 L.Ed. 663, 670, 63 S.Ct. 499], and footnotes 5-9.)

[19]See also *Garnhart* v. *U. S.,* 16 Wall (U.S.) 162 [21 L.Ed. 275, 276]; *The J. W. French,* 13 F. 916, 924; *651 Chests of Tea* v. *United States,* 1 Paine (U.S. Cir.Ct.) 499; *United States* v. *Yamoto,* 9 Cir., 50 F.2d 599.

[20]See same case below *Colon* v. *Lisk,* 13 App.Div. 195 [43 N.Y.S. 364].

[21]The charge was using an automobile to transport liquor in violation of law. The Oklahoma statute expressly provided that the hearing be 'without a jury.'

[22]The statute provided that the return of seizure should be tried without a jury. The lower court forfeited the automobile of the appellant because her husband drove it with a pint of whiskey in his pocket. She did not know that her husband carried the whiskey in the car.

[23]See also *Lorance* v. *State,* (Tex. Civ. App.) 172 S.W.2d 386; *Donovan* v. *Mayor etc. of Vicksburg,* 29 Miss. 247, 249 [64 Am.Dec. 143].

band, which are ordinarily used for an unlawful purpose, and are public nuisances *per se*.[24] While property kept in violation of law which is incapable of lawful use and declared to be a nuisance *per se* may be forfeited without a trial by jury under the police power, it does not follow that property ordinarily used for lawful purposes—innocent property—may be forfeited without a trial by jury where an issue of fact is joined as to whether the property was being used for an unlawful purpose or is to be taken from an innocent owner. There is no general constitutional right to a jury trial in actions for the seizure and forfeiture of contraband articles.[25] But property is not contraband or a public nuisance merely because it was instrumental in the commission of a public offense.

 "It is argued that this proceeding for the forfeiture of property used in violation of law is a special proceeding, equitable in nature. . . . The right to a trial by jury cannot be avoided by merely calling an action a special proceeding or equitable in nature. If that could be done, the Legislature, by providing new remedies and new judgments and decrees in form equitable, could in all cases dispense with jury trials, and thus entirely defeat the provision of the Constitution. The Legislature cannot convert a legal right into an equitable one so as to infringe upon the right of trial by jury.[26] The provision of the Constitution does not permit the Legislature to confer on the courts the power of trying according to the course of chancery any question which has always been triable according to the course of the common law by a jury. If the action has to deal with ordinary common-law rights cognizable in courts of law, it is to that extent an action at law.[27] In determining whether the action was one triable by a jury at common law, the court is not bound by the form of the action but rather by the nature of the rights involved and the facts of the particular case—the gist of the action. A jury trial must be granted where the gist of the action is legal, where the action is in reality cognizable at law.

 "It is suggested that the statute was enacted since

"[24]See *State* v. *Intoxicating Liquor*, 55 Vt. 82; *State* v. *Certain Intoxicating Liquors*, 53 Utah 171 [177 P. 235].

"[25]See *Moore* v. *Brett*, 193 Okla. 627 [137 P.2d 539, 540]; *People* v. *One Pinball Machine*, 316 Ill.App. 161 [44 N.E.2d 950, 957].

"[26]Norris's Appeal, 64 Pa. 275, 280.

"[27]*Donahue* v. *Meister*, 88 Cal. 121, 127 [25 P. 1096, 22 Am.St.Rep. 283]; *Cassel* v. *Gregori*, 28 Cal.App.2d Supp. 769, 774 [70 P.2d 721].

the adoption of the Constitution, and for that reason is not within the guaranty of trial by jury. The constitutional right of trial by jury is not to be narrowly construed. It is not limited strictly to those cases in which it existed before the adoption of the Constitution but is extended to cases of like nature as may afterwards arise. It embraces cases of the same class thereafter arising. At common law, prior to the adoption of the Constitution, a party against whom the forfeiture of property used in violation of law (then a carriage, wagon, horse or mule, now usually an automobile), was sought to be enforced was entitled to a trial by jury. Consequently such right exists now.[28] The introduction of a new subject into a class renders it amenable to its general rules, not to its exceptions.[29]

■ ''There were petty offenses against statutes or municipal ordinances which were not triable by jury at the time the Constitution was adopted. As to them, the right of trial by jury has never existed; and, since they were triable without a jury when the Constitution was adopted, they are now triable without a jury. Blackstone gives a number of illustrations.[30] In none of the illustrations given by Blackstone was the power sanctioned or upheld to enforce, in a summary proceeding, without a jury, the forfeiture of property which may be, and ordinarily is, used for lawful purposes. . . .

■ ''We conclude that this forfeiture proceeding by the State is the type of action which was cognizable in a common-law court, and triable by a jury in the Court of Exchequer, according to the course of the common law; that trial by jury was recognized as a right in the trial of actions for the forfeiture of property seized because used in violation of law at common law at the time of the adoption of the Constitution of California, and that appellant had a constitutional right to a trial by jury of the issues of fact in this case.

■ ''The denial of a trial by jury to one constitutionally entitled thereto constitutes a miscarriage of justice and requires a reversal of the judgment. (*Cowlin* v. *Pringle*, 46 Cal.App.2d 472, 476 [116 P.2d 109].)''

■ The attorney general contends: (1) that this conclu-

''[28]*Colon* v. *Lisk*, 13 App.Div. 195, 202 [43 N.Y.S. 364, 369]; *State* v. *1920 Studebaker*, 120 Ore. 254 [251 P. 701, 50 A.L.R. 81].

''[29]*Wood* v. *City of Brooklyn*, 14 Barb. 425, 432; Cooley, Constitutional Limitations, 8th ed. vol. I, pp. 668-674. *Cf. Moore* v. *Purse Seine Net*, 18 Cal.2d 835, 837 [118 P.2d 1].

''[30]4 Bl. Com. (12th ed.), ch. 20, 281 et seq.

sion has been rejected by a majority of the states that have considered the question; (2) that the federal practice denies lienholders a jury trial; (3) that at least three decisions of this state have held that such a proceeding is equitable in nature; (4) and that cases before 1849 in which jury trials were allowed involved forfeitures for violation of revenue and maritime laws and are not authority for forfeitures founded on the police power.

(1) It is true that a number of states have denied the right to a jury trial in forfeiture proceedings. An examination of the cases cited by the attorney general, however, shows that in none of them was the problem adequately discussed in terms of the common law practice in England and the United States before 1850.

(2) In determining questions of forfeiture on the high seas, the federal courts sit as courts of admiralty and, in accordance with historic admiralty practice, there is no right to a jury trial. In cases of forfeiture arising on land, however, there is a right to a jury trial. (*Union Insurance Co.* v. *United States,* 73 U.S. 759, 764-766 [18 L.Ed. 879]; *Armstrong's Foundry,* 73 U.S. 766, 769 [18 L.Ed. 822]; *United States* v. *Yamoto,* 50 F.2d 599, 600; see, also, *Dobbins* v. *United States,* 95 U.S. 395, 404 [24 L.Ed. 637]; *Goldsmith, Jr.-Grant Co.* v. *United States,* 254 U.S. 505, 509 [41 S.Ct. 189, 65 L.Ed. 376]; I Kent's Commentaries 375-376.)

The attorney general has cited two federal decisions under the National Prohibition Act that apparently hold that, whatever the rights of the party in possession of the vehicle, a lienholder has no right to a jury trial. (*Missouri Investment Corp.* v. *United States,* 32 F.2d 511; *C. I. T. Corp.* v. *United States,* 37 F.2d 890, 891.) In the earlier of these cases, cited and followed in the later case, the court stated that, "The nature of the proceedings which may be taken under title 2, section 26, of the National Prohibition Act (27 U.S.C.A. § 40), by the claimant of the seized vehicle, is not made very clear. We think, however, that such a petition as this is in the nature of an intervening petition in equity." (32 F.2d at 511.) Whether or not this interpretation of that act can be considered authoritative in the federal courts (see *United States* v. *Yamoto,* 50 F.2d 599, 600), we do not subscribe to the reasoning on which it rests.

Two theories appear to underlie the conclusion that a lienholder in a forfeiture action is merely a petitioner in equity.

The first theory is that the statute has combined in a single proceeding what were formerly two actions: (1) a common law action for declaration of forfeiture and (2) an equitable suit to foreclose a lien. It is argued that under ordinary circumstances the lienholder has only an equitable remedy to enforce his lien and that he gains no right to a jury trial merely because that remedy is joined with a forfeiture action triable by jury.

Although the suit by the state is nominally *in rem* against the vehicle itself, in reality it is directed against those who have property interests in the vehicle. The automobile is not itself an offender but has merely been used in the commission of an offense. The statute operates to transfer property rights in the automobile to the state, as a penalty against the owners for this misuse. In *People* v. *Broad, supra,* 216 Cal. 1, 3, 7, an earlier statute on this subject was declared unconstitutional because of its failure to provide notice and hearing for interested parties other than the narcotics offender. That case clearly recognized, moreover, that the forfeiture is directed against all owners, and in fact the owner involved in that case was the assignee of the seller under a conditional sale contract. (See, also, *Ieck* v. *Anderson,* 57 Cal. 251, 252 [40 Am.Rep. 115].) The present statute provides that notice shall be given to owners (Health & Saf. Code, § 11613), which includes legal owners such as appellant (Veh. Code, §§ 67, 197), and that they may file answers (Health & Saf. Code, §§ 11619, 11620).

It is true that the forfeiture does not apply to innocent lienholders. It does not follow, however, that lienholders are not parties to the forfeiture. One of the purposes of the forfeiture proceeding is to determine whether or not the lienholder is in fact "innocent." With respect to the issue of reasonable investigation of the registered owner (Health & Saf. Code, § 11620), as well as the issue of the narcotics offense (Health & Saf. Code, § 11619), the appellant is vitally concerned, for unless there is an adverse decision on both of these issues, appellant's interest in the vehicle is not forfeited to the state. It is therefore a misconception to regard appellant as interested only in the establishment and foreclosure of its lien—it is also interested in protecting that lien from the claim against it that is being asserted by the state.

A second theory underlying the federal cases cited by the attorney general is that a lienholder is an intervener and that, since intervention was not allowed at common law, his

position is analogous to that of an intervening petitioner in equity. This argument overlooks the extensive use of intervention permitted under our modern system of code pleading, even as to actions formerly tried in the common law courts. It also overlooks an essential difference between the National Prohibition Act and the statute now before us. By the National Prohibition Act, the declaration of forfeiture was made a part of the criminal action in which the party guilty of illegally transporting liquor was prosecuted; after his conviction, lienholders were permitted to intervene. The present California procedure, however, does not combine the forfeiture action with the criminal prosecution. The forfeiture is litigated in an independent proceeding in which a lienholder is not an intervener but rather, in compliance with *People* v. *Broad, supra,* a necessary party defendant. As noted above, the statute itself expressly refers to his pleading as an "answer" (Health & Saf. Code, §§ 11619, 11620).

(3) In *Traffic Truck Sales Co.* v. *Justice's Court,* 192 Cal. 377, 384 [220 P. 307], it was stated that a forfeiture proceeding such as that under consideration herein is in the nature of an equitable proceeding. No issue of jury trial was presented, however, and the court did not consider the historical background of forfeiture statutes. In reliance on this decision, similar statements appear in *People* v. *One 1941 Mercury Sedan,* 74 Cal.App.2d 199, 202 [168 P.2d 443], and *People* v. *One 1941 Chrysler Sedan,* 81 Cal.App.2d 18, 30 [183 P.2d 368]. In view of the conclusion reached in the present case, these expressions must now be regarded as disapproved.

(4) Contrary to the contention of the attorney general, a number of the forfeitures cited herein did involve exercise of the police power. (See, for example, Jenkinson, Select Cases in the Exchequer of Pleas, 48 Selden Society Publications, p. 168, No. 215 [piracy, robbery, and homicide]; 4 W. & M., c. 8, § 6 [robbery]; 1 James I, c. 22 [trade regulation]; 42 Geo. III, c. 38, § 20 [unhealthful adulterated beer]. See, also, *Mitchell* v. *Torup,* 145 Eng.Rep. 764, 767.)

The judgment is reversed.

EDMONDS, J.—The question here presented for decision concerns only the right of the corporate mortgagee of the seized automobile to a trial by jury. In effect, by an affirmative defense, the corporation is seeking to establish and to foreclose a lien upon the vehicle.

The position of a lienholder is substantially different from that of an owner of property seized and ordered to be sold because of an asserted violation of law. The foreclosure of a chattel mortgage is an equitable proceeding (*Elmore Jameson Co.* v. *Smith*, 34 Cal.App.2d 609, 616 [93 P.2d 1063]; *Bush* v. *Bank of America*, 1 Cal.App.2d 588, 592 [37 P.2d 168]), and it is elementary in equity cases that there is no right to a trial by jury. (*J. I. Case T. M. Co.* v. *Copren Bros.*, 45 Cal. App. 159, 167 [187 P. 772].) This general rule has been followed in forfeiture proceedings. For example, in *Missouri Investment Corp.* v. *United States*, 32 F.2d 511, the holder of a chattel mortgage sought to establish its lien in accordance with the provisions of the Volstead Act. The statute authorized forfeiture of any vehicle used for the unlawful transportation of intoxicating liquor but allowed a lienholder to obtain the amount due from the owner if the seizure was upheld. The procedure specified was substantially the same as that provided in sections 1620-22 of the Health and Safety Code of this state. In that case, it was said: "The court, through the order for sale, has at least constructive possession of the property, and the determination of the liens upon it is essentially a matter of equitable jurisdiction. It follows that there was not right to a jury trial. . . ." (Ibid.)

The decision was cited and followed in *C. I. T. Corp* v. *United States*, 37 F.2d 890. There the claimant was the assignee of a conditional sales contract of an automobile ordered forfeited under the Volstead Act. The court found that the contract was a chattel mortgage and held: ". . . the intervention is equitable in character, being designed to enforce a lien. . . ." (37 F.2d 890, 891.)

True, there are cases which appear to hold to the contrary, but in not one of them was the court's attention directed to the distinction between the position of an owner of property and a mortgagee. The applicant in *United States* v. *Yamoto*, 50 F.2d 599, was the holder of a conditional sales contract of a vehicle ordered forfeited under the Volstead Act. No question concerning the right of trial by jury was raised at the trial of the action and the case was heard by the court. On appeal from a judgment in favor of the claimant, it was held that the action was one at law, triable by a jury, and since a jury had not been waived "in the manner prescribed by law," the appellate review was limited to a consideration of the process, pleadings and judgment.

That conclusion was based upon *Kennedy* v. *United States*,

44 F.2d 57. The court held that a seizure on land is not within the admiralty jurisdiction of the United States and the proceeding for forfeiture was, therefore, an action at law, triable by jury. In the Yamoto case, no reference was made to cases in which lienholders claimed the right to foreclose but looked only to the place of seizure as the basis for its decision.

For these reasons, I would hold that a mortgagee seeking to establish and to foreclose lien upon seized property is not entitled to a trial by jury upon those issues.